*Middletown,*
October,
1819.

Lord
*v.*
Shaler.

| 3 | 135 |
|---|---|
| 59 | 507 |

———○+○———

### THE PRESIDENT, DIRECTORS AND COMPANY OF THE MIDDLE-TOWN BANK *against* RUSS and others.

*October* 16.

It is no objection to a bill in chancery against the principal debtor, that there is remedy at law against a surety.

Where a bill in chancery was brought against the individual members of a corporation, for the payment of a debt from the corporation, without setting forth, or counting on, the act of incorporation, by which alone the members were made individually liable; it was held, that the bill could not be sustained.

A bill for discovery, by the creditors of a corporation, against the individual members, made liable, by statute, for the debts of the corporation, in a case not otherwise exceptionable, may be sustained.

Where the plaintiff in a bill brought for a discovery and relief, the discovery being sought as auxiliary to the relief, is not entitled to the relief, he cannot have the discovery.

But a court of chancery having taken cognizance of a suit for the purpose of a discovery, will entertain it for the purpose of relief, in most cases of fraud, account, accident, and mistake.

THIS was a bill in chancery, brought originally to the superior court, for discovery and relief.

The bill stated the following case. *The Middletown Manufacturing Company* was formed, and commenced business, by that name, in the year 1812. Soon afterwards, the company became indebted to the plaintiffs, on notes made by *Arthur W. Magill*, its agent, payable to *Alexander Wolcott* and other persons, or order, and by them indorsed, amounting to about 10,000 dollars. These notes were discounted at the *Middletown* bank, at different times, during the year, for the accommodation of the company, and to enable it to purchase its stock, and carry on its business. The debt thus contracted has never been paid; but the notes were renewed from time

*Middletown,*
October,
1819.

Middletown
Bank
*v.*
Russ.

to time, according to the rules and regulations of the bank, the old notes, when due, being cancelled, and new ones substituted, until the summer of 1816, when the company gave three notes, amounting to 8,900 dollars, signed by *A. W. Magill* as agent, and indorsed by *Alexander Wolcott*, each payable eighty-eight days after its date; and on the 31st of *January*, 1817, another note was given, in the same manner, for 350 dollars, indorsed by *Magill & Williams*; all which notes were discounted by the plaintiffs, for the benefit and accommodation of said company, at the request of its agent. When they respectively became due, notice thereof was immediately given to the company and the indorsers; who neglected and refused, as they have ever since done, to pay the same. In *September*, 1817, the plaintiffs brought an action of *assumpsit* against the company, on each of those notes, and recovered judgment before the superior court, on the 5th of *August* 1818, for the several sums specified therein, with interest and costs, amounting to the sum of 10,599 dollars, 31 cents. Executions were shortly afterwards taken out, and put into the hands of an officer, who demanded payment thereof of said company, through *Magill*, its agent, and made search for the personal property of said company; but he was unable to obtain payment, or find property, and therefore returned the executions unsatisfied; the amount of which, with the officer's fees and interest, is justly due to the plaintiffs from the members of said company, whose persons and property are by law liable for the payment thereof.

The bill then stated, that when the debt was first contracted, in the year 1812, and at the respective dates of the several notes, *John Russ* of *Hartford*, *George Blake* of *Boston*, *Thomas Barlow* of the city of *Washington*, *Lemuel Whitman* of *Farmington*, *Ithamar Atkins*, *Henry Wolcott*, *Esther Magill*, *Martha Williams*, wife of *Samuel Williams*, *Arthur W. Magill*, *Sarah Waldo* and *Elizabeth Magill* of *Middletown*, were reported to be, and were in fact, and have ever since continued to be, members of said company. They were then charged with having fraudulently combined with persons to the plaintiffs unknown, to defeat the plaintiffs of their just rights; and with having deceitfully and wickedly concealed and suppressed all ordinary evidence of the fact that they were members. And the plaintiffs averred, that they had not any legal evi-

dence of such fact; nor had they knowledge or proof wheth-er any other persons were members.

The prayer of the bill as to disclosure, was, that the defend-ants be compelled to disclose, on oath, their knowledge as to the books and papers of said company, on which the names of the stockholders appear, or by which the persons who are, or have been, stockholders, may be ascertained, if any such books or papers remain in existence; and that they be also decreed to disclose, on oath, what persons now compose the said company, and are members thereof, and who were members thereof, at the times when the said debts were re-spectively contracted, by said company, with the plaintiffs, and at the times when said notes were respectively given or re-newed, and when said judgments were rendered.

The prayer as to relief, was, that the defendants, or such of them as the court should consider bound in law and justice so to do, should be ordered and decreed to pay to the plaintiffs their said demands, in such proportions as the court should deem just and equitable.

To this bill the defendants demurred; and the court reser-ved the case for the advice of all the Judges.

*Daggett* and *N. Smith*, in support of the demurrer, conten-ded, 1. That no foundation for relief was stated, because the act of incorporation, under which the *Middletown Manufactu-ring Company* was formed, being in its nature a private act, was not set forth, either in form, or in substance; and the de-fendants were under no obligation to the plaintiffs, except what arose from that act. The form of the act, with the cir-cumstance of its being printed with the public acts, (*a*) does not alter its nature. *Bul. N. P.* 222, 3. *Phill. Ev.* 220.

2. That the plaintiffs have adequate remedy at law. In the first place, all that the plaintiffs seek, is payment of their debt against the company *in money*. If the defendants are in-dividually liable to pay the debt, a court of law can do com-plete justice. Secondly, it appears from the bill, that the plaintiffs may resort to the *indorsers*, and recover the money from them.

3. That the plaintiffs are not entitled to a discovery. First, no foundation is laid for a discovery from *any person*; no facts being stated from which it appears, that common law proof

(*a*) See 2 *Stat. Conn.* 41. *Oct. Sess.* 1810.

18

*Middletown,*
*October,*
*1819.*

Middletown
Bank
*v.*
Russ.

*Middletown,*
October,
1819.

Middletown
Bank
*v.*
Russ.

cannot be had. Secondly, the discovery sought is not from the *proper sources.* The contract was made with the company; and the individual stockholders are not presumed to have any knowledge on the subject. They do not know who the members of the company are. The books of the company, and the clerk, should be resorted to, for this information. *Dineley* v. *Dineley,* 2 *Atk.* 394.

4. That admitting the plaintiffs would be entitled to a discovery, on a bill properly framed for that purpose ; yet this bill being brought for a discovery *and relief,* and the discovery being sought as auxiliary to the relief, if the plaintiffs are not entitled to the relief, they cannot have the discovery. *Coop. Eq. Plead.* 117. 188. 1 *Madd. Chan.* 175. *Price* v. *James,* 2 *Bro. Ch. Ca.* 319. *Collis* v. *Swayne,* 4 *Bro. Ch. Ca.* 480. *Muckleston* v. *Brown,* 6 *Ves.* jun. 63. *Barker* v. *Dacie,* 6 *Ves.* jun. 686. *Baker* v. *Mellish,* 10 *Ves.* jun. 544. *Gordon* v. *Simpkinson,* 11 *Ves.* jun. 509. *Sutton* v. The Earl of *Scarborough,* 9 *Ves.* jun. 71. 75.

*Sherman* and *Staples,* contra, as to the first point, remarked, That it did not appear from the bill, that the defendants were ever incorporated : it only appeared, that they were formed into a company, and commenced business, under the name of the *Middletown Manufacturing Company.* But if the defendants are a corporation, and their act of incorporation is a private act, the bill may be readily amended. They then contended,

2. That the remedy at law, was, at best, doubtful, and subject to much delay and inconvenience. Suit after suit may be brought at law, and be defeated as often as brought, by a plea in abatement for the omission of some stockholder as a party defendant. But it is one of the peculiar advantages of a suit in chancery, that it allows additional parties to be made, and cited in, without interrupting its progress. This is, therefore, a proper case, for the *relief* prayed for.

3. That there was a sufficient foundation laid for the *discovery.* The plaintiffs clearly had an *interest* in the subject matter; the evidence sought was *material,* and, under the circumstances of the case, could not be supplied by common law proof; and the defendants, being individually liable, (*a*) were the proper persons to be resorted to.

(*a*) *Southmayd* & al. v. *Russ* & al., ante 52.

*Middletown,*
October,
1819.

Middletown
Bank
*v.*
Russ.

4. That although the plaintiffs may have remedy at law, so that they could not come into chancery for relief only; yet where a court of chancery may hold jurisdiction for the purpose of discovery, it will go further, on the principle of preventing a multiplicity of suits, and grant relief. *Jesus College* v. *Bloom,* 3 *Atk.* 263. *Swift's Ev.* 116. *Russel* v. *Clark's* exrs., 7 *Cranch* 69. 89.

HOSMER, Ch. J. The first objection, in this case, is, that there is an adequate remedy at law against the indorsers of the notes mentioned in the plaintiffs' bill. It does not lie in the mouths of the defendants to make this objection. It is sufficient for the plaintiffs, that there is not adequate remedy at law against the defendants.

The plaintiffs aver, that the *Middletown Manufacturing Company* is indebted to them in a large sum; and the allegations sufficiently shew that it is a corporation. The bill proceeds on the ground, that the *individual members* of this company are under personal obligation to discharge the debt; and stripped of this principle, it is wholly destitute of merits. The members of the corporation, in that event, may say, that they are not answerable to the plaintiffs: and this is always good ground to sustain a demurrer, both to the discovery and relief. *Coop. Eq. Plead.* 174. It would be absurd to proceed on a bill, when it is apparent, that the defendants are not interested in the subject of it. Now, on this point, the plaintiffs have wholly failed *in limine.* The charter of incorporation is neither recited, nor counted on; and the court cannot take notice of a private act of the legislature, unless it is duly pleaded. By the common law, the members of a corporation are not individually liable for the debts of the corporate body; and no liability has been averred, other than what the common law sanctions. This objection to the plaintiffs' bill is undoubtedly fatal.

I cannot discover any force in the remark, that in a case otherwise unexceptionable, the members of the corporation would be protected from giving the discovery sought. In support of it, no adjudged case, or established principle, has been cited. A discovery from the members of a corporation, made personally liable by statute, although new in the instance, would be sustained, on the ordinary equitable ground upon which discoveries are enforced. There is nothing unusual in

*Middletown,*
October,
1819.

Middletown
Bank
*v.*
Russ.

demanding of a debtor the disclosure of facts, which may ensure his liability, and that of others connected with him. Had it appeared, that the corporation had books and papers containing the names of its stockholders, it would still be a question whether a discovery from this source would effect the equitable object of the plaintiffs' bill. But nothing of this kind is apparent; much less, does it appear, that the books and papers, if they existed, would comprise all the information desired; or that the production of them would answer the reasonable exigencies of the case. The plaintiffs have averred, that the defendants possess full knowledge on the subject of enquiry; and nothing short of a demand unnecessary and vexatious, should protect them from the discovery sought.

An objection, however, exists to the discovery, that it would be immaterial, inasmuch as the court could not follow it up with the relief solicited. It is a well established principle, that "if a bill be brought for a discovery *and relief*, and the discovery is sought for the purpose of the relief, if a demurrer or plea will hold to the relief prayed, the plaintiff cannot have a discovery." 1 *Coop. Eq. Plead.* 117. 188. 1 *Madd. Chan.* 175. 2 *Fonb. Eq.* 494. *n.* *Price* v. *James*, 2 *Bro. Ch. Ca.* 319. *Collis* v. *Swayne*, 4 *Bro. Ch. Ca.* 480. It is because the discovery is auxiliary and incidental to the relief; and if the relief is unattainable, the discovery can answer no imaginable purpose.

This brings me to consider, whether a court of chancery, having taken jurisdiction for enforcing a discovery, will universally assume cognizance of the cause, settle every question which may arise, and grant ultimate relief. I have no hesitation in giving a negative to this question. The practice of this state, on this subject, has only existed at the circuits in a few instances; and neither from their frequency, nor from the discussion and deliberation with which they have been attended, ought to be considered as possessing the force of precedent. I cannot find, that in *Westminster-Hall*, or in any of the sister states, a similar practice has been adopted. On the contrary, the distinction is familiar between bills technically denominated *bills of discovery*, in which the discovery is auxiliary to a suit in a court of law, and *bills of discovery and relief*, in which the case is terminated in chancery.

The enquiry yet remains, whether on a bill like the present,

*Middletown,*
October,
1819.

Middletown
Bank
*v.*
Russ.

*to ascertain the parties to a contract*, chancery, having caused a discovery, will administer relief. No such case has been shewn; and no principles of analogy, warrant the supposition. To strike out the distinguishing principle, on which courts of equity universally refuse relief *after* a discovery, is matter of considerable difficulty; but it is obviously clear, that it is never given in cases similar to the one under consideration. It is a very unfounded conception, that every resort to chancery, for the ascertainment of a fact, transfers the jurisdiction over the cause from law to equity, when many, and perhaps most, of the facts are disputed, and many questions of law remain open for decision. It is true, that chancery, having acquired cognizance of a suit for the purpose of a discovery, will entertain it for the purpose of relief, in most cases of *fraud, account, accident* and *mistake.* 1 *Fonb. Eq.* 11. But in *Geast* v. *Barber,* 2 *Bro. Ch. Ca.* 61., which was a bill for discovery of the quantity of coal and coke from a mine, the Master of the Rolls said, he was clear the remedy, that is, the relief, was at law. And in *Lee* v. *Alston,* 1 *Bro. Ch. Ca.* 194. it was observed by Lord *Thurlow,* that "if the case," (which was to ascertain the quantity of timber cut down,) "required nothing but a discovery, it should not come here, but, on the discovery had, they should proceed at law; but where an *account* is necessary, it carries relief with it." Had the plaintiffs averred, (having first shewn the liability of the members of the *Middletown Manufacturing Company* to their claim,) that they were desirous of bringing a suit against them, and intended to do it, I should entertain no doubt relative to the propriety of enforcing a discovery, in aid of the legal jurisdiction. But, as I am clear, that the relief prayed for is inadmissible, the discovery would be futile; and, for the several reasons assigned, the plaintiffs' bill ought to be dismissed.

The other Judges were of the same opinion.

Demurrer to be sustained.