CHURCH HOMES, INC. *v.* ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION
ACT, ET AL.
(SC 16073)

Callahan, C. J., and Berdon, Norcott, Katz and McDonald, Js.

Argued May 26—officially released August 24, 1999

*Hugh F. Murray III*, with whom were *Thomas M. Cloherty* and, on the brief, *Everett E. Newton*, for the appellant (plaintiff).

*Thadd A. Gnocchi* and *Richard T. Sponzo*, assistant attorneys general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend*, assistant attorney general, for the appellee (named defendant).

*Kevin A. Creane*, for the appellee (defendant Jasmine R. Bailey).

*Opinion*

NORCOTT, J. Pursuant to General Statutes § 31-236 (a) (3),[1] an employee is ineligible for unemployment benefits when unemployed because of a labor dispute,

---

[1] General Statutes § 31-236 (a) provides in relevant part: "An individual shall be ineligible for benefits . . . (3) during any week in which it is found by the administrator that his total or partial unemployment is due to the existence of a labor dispute other than a lockout at the factory, establishment or other premises at which he is or has been employed, provided the provisions of this subsection shall not apply if it is shown to the satisfaction of the administrator that . . . (C) his unemployment is due to the existence of a lockout. A lockout exists whether or not such action is to obtain for the employer more advantageous terms when . . . (ii) an employer makes an announcement that work will be available after the expiration of the existing contract only under terms and conditions which are less favorable to the employees than those current immediately prior to such announcement; provided in either event the recognized or certified bargaining agent shall have advised the employer that the employees with whom he is engaged in the labor dispute are ready, able and willing to continue working pending the negotiation of a new contract under the terms and conditions current immediately prior to such announcement . . . ."

unless such unemployment is due to, inter alia, a lockout by the employer. In this appeal, we must determine: (1) whether the trial court properly concluded that a lockout existed and that, consequently, the employees were entitled to unemployment benefits pursuant to § 31-236 (a) (3) (C) (ii) where the employer had announced that the striking employees could return to work under the terms of an expired collective bargaining agreement except for the arbitration provision; and (2) if the trial court interpreted § 31-236 (a) (3) (C) (ii) properly, whether such interpretation is nevertheless preempted by federal labor laws. The named defendant administrator of the Unemployment Compensation Act (administrator) awarded compensation benefits to the defendant Jasmine R. Bailey, an employee of the plaintiff, Church Homes, Inc. Upon appeal by the plaintiff, that award was affirmed by the employment security appeals referee (appeals referee), the employment security appeals division board of review (board), and the trial court. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The facts of this case are not in dispute and are set forth in the decision of the board. "On November 1, 1995, the collective bargaining agreement between the [defendant] and other employees, members of the New England Healthcare Employees Union District 1199, (AFL-CIO) (hereinafter known as the union), and the employer expired and the employees continued working under the terms of the expired contract. On November 2, 1995, the union notified the employer that the approximately one hundred and eighty-five members of the service and maintenance local would strike on November 16, 1995. The strike commenced at 6:00 p.m.

on November 16, 1995. On November 21, 1995, the union advised the employer that 'the striking employees are ready, willing and able to return to work immediately, as a group, and to continue work under the terms and conditions of the collective bargaining agreement in effect on November 1, 1995. The offer is made unconditionally. . . .' On November 22, 1995, the employer responded in writing that it would accept the offer to return to work under the terms and conditions of the expired contract except that the provisions providing for union security obligations and the right to invoke arbitration for post-contract events would no longer be in effect. The employees did not return to work under the terms set forth by the employer. A tentative settlement agreement was reached on December 18, 1995 . . . ."

The administrator found that the initial strike, for which compensation could not be granted, had been converted to a lockout pursuant to § 31-236 (a) (3) (C) (ii) by the plaintiff's November 22, 1995 announcement that work would be made available according to the terms and conditions of the expired collective bargaining agreement (agreement), except for the arbitration provision. Accordingly, the administrator awarded unemployment benefits to those employees involved in the labor dispute from the week ending November 25, 1995, until December 18, 1995. The plaintiff appealed the administrator's decision to the appeals referee. The administrator's decision was affirmed by the appeals referee and, subsequently, by the board. The plaintiff then appealed to the trial court, which affirmed the decision of the board.

In this appeal, the plaintiff contends that the employees are ineligible for benefits and that its announcement that work would be available did not constitute a lockout pursuant to § 31-236 (a) (3) (C) (ii) because the terms and conditions set forth in its announcement

were identical to those in existence immediately prior to such announcement. Specifically, the plaintiff claims that as of midnight, November 1, 1995, the agreement had expired, and thus, by operation of federal law, the arbitration provision automatically ceased to have effect; therefore, the terms and conditions current immediately prior to the announcement were the then existing terms of the expired agreement.[2] Hence, the circumstances did not constitute a lockout pursuant to § 31-236 (a) (3) (C) (ii) that would have made the employees eligible for unemployment benefits. Moreover, the plaintiff asserts that any construction of § 31-236 (a) (3) (C) (ii) to the contrary would be preempted by federal labor laws.

The administrator contends, however, that the plaintiff was not required by federal law to cease enforcement of the arbitration provision. Therefore, the administrator claims, the plaintiff's announcement that work would be available was under terms and conditions less favorable than those current immediately prior to such announcement. Accordingly, these circumstances constituted a lockout pursuant to § 31-236

---

[2] Before this court, the plaintiff addresses the expiration of the arbitration provision, as well as the union security and checkoff provisions. In its decision, the board stated that it could not "tell from the record . . . whether the parties made any effort to come to an agreement about the union security and checkoff provisions being extended when the contract expired, or whether the employer had stopped checking off dues prior to its November 22, 1995 announcement, thus establishing, and putting the union on notice, that the provisions were no longer in effect. Since these material facts regarding the dues checkoff and security provisions are not in the record before us, we will focus our analysis solely on the other change implemented by the employer, the elimination of the arbitration provision." In our review of the trial court's affirmance of the board's decision, we likewise confine our analysis to the exclusion of the arbitration provision from the terms and conditions announced by the plaintiff.

We note, for purposes of clarification, that the union security provision of the agreement requires the plaintiff to fire any employee who fails to join or pay dues to the union. The checkoff provision requires the plaintiff to deduct dues from employee paychecks and deliver the money directly to the union.

(a) (3) (C) (ii). Contrary to the argument of the plaintiff, the administrator claims that this construction of § 31-236 (a) (3) (C) (ii) and the corresponding award of unemployment benefits to the employees are not preempted by federal law. We agree with the administrator.

I

The plaintiff first contends that the trial court's interpretation of § 31-236 (a) (3) (C) (ii) was improper. Specifically, the plaintiff claims that in the context of this case, the statutory language "those [terms and conditions] current immediately prior to such announcement" refers to the terms and conditions of the expired agreement, except for the arbitration provision. We disagree with the plaintiff's interpretation of § 31-236 (a) (3) (C) (ii).

We begin by setting out the appropriate standard of review. Generally, "[o]ur review of an agency's decision on questions of law is limited by the traditional deference that we have accorded to that agency's interpretation of the acts it is charged with enforcing. *Police Dept.* v. *State Board of Labor Relations*, 225 Conn. 297, 300, 622 A.2d 1005 (1993). We do not, however, accord special deference to the agency's decision when that decision involves a question of law [that] has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 25, 682 A.2d 99 (1996)." (Internal quotation marks omitted.) *Casey* v. *Northeast Utilities*, 249 Conn. 365, 369, 731 A.2d 294 (1999). Moreover, we must determine "whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or

an abuse of discretion." (Internal quotation marks omitted.) *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act,* 238 Conn. 273, 276, 679 A.2d 347 (1996), quoting *United Parcel Service, Inc.* v. *Administrator, Unemployment Compensation Act,* 209 Conn. 381, 385–86, 551 A.2d 724 (1988).

Our resolution of this issue is, at bottom, a matter of statutory interpretation. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, 'we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.' " (Citation omitted.) *United Illuminating Co.* v. *New Haven,* 240 Conn. 422, 431, 692 A.2d 742 (1997).

We begin our analysis by examining the plain language of § 31-236 (a) (3) (C) (ii), which provides that an individual shall be ineligible for unemployment benefits when his unemployment is due to the existence of a labor dispute, unless, inter alia, "his unemployment is due to the existence of a lockout. *A lockout exists* whether or not such action is to obtain for the employer more advantageous terms *when . . . an employer makes an announcement that work will be available after the expiration of the existing contract only under terms and conditions which are less favorable to the employees than those current immediately prior to such announcement . . . .*" (Emphasis added.)

We interpret the statutory language, "[conditions] current immediately prior to such announcement," to

refer to those conditions that were contained in the last *mutual agreement* between the union and the plaintiff. This is consistent with the board's prior interpretations, which, although not binding, are nevertheless compelling.[3] The board previously has interpreted the statutory language "[conditions] current immediately prior to such announcement," to mean "those conditions that existed in the last, expired contract between the union and the company." *Sturtevant* v. *Tectonic Industries, Inc.*, Employment Security Appeals Division Board of Review, Case No. 1860-83-BR (October 6, 1983) p. 2. The reasoning behind this conclusion was that "[a]ny other interpretation would enable the employer to require the union and its members to submit to a new condition of employment that the employer may have unilaterally instituted between the date of the expiration of the previous contract and the subsequent date of the announcement to the union, as required by statute, that work was available to the employees under the terms and conditions of employment which included the newly imposed condition in which the union and its members had no voice. . . . To hold otherwise would result in granting to the employer in such matters an advantage that would be seriously detrimental to the union members engaged in the labor dispute with the employer and with further resulting unintended loss of unemployment compensation entitlement." Id.

Similarly, in *Simons* v. *Colt Industries, Inc.*, Employment Security Appeals Division Board of Review, Case No. 1335-87-BR (December 1, 1987) p. 19, the board explained that "[a]ny mutually agreed upon past practice or term or condition to which both parties stipulate

---

[3] In its affirmance of the board's decision in the present case, the trial court also relied in part upon the board's decisions in *Sturtevant* v. *Tectonic Industries, Inc.*, Employment Security Appeals Division Board of Review, Case No. 1860-83-BR (October 6, 1983), and *Simons* v. *Colt Industries, Inc.*, Employment Security Appeals Division Board of Review, Case No. 1335-87-BR (December 1, 1987).

will be a term and condition current immediately prior to 'such announcement.' In the present case, however, since the union has not assented to the changes imposed after the expiration of the contract, it is the contractual terms which control the employment agreement between Colt [Industries, Inc.] and the union. The employer is not locked into those last mutually agreed upon terms but may choose for business purposes to institute changes. However, as elsewhere in unemployment compensation law, where an employer unilaterally creates a change in the conditions of employment, it may be subject to liability for unemployment compensation benefits paid to those unemployed as a consequence of its actions."

Moreover, as the board noted in *Simons* v. *Colt Industries, Inc.*, supra, p. 18, "[o]ur interpretation of § 31-236 (a) (3) is consistent with the general principles of unemployment compensation law, which seeks to preserve the conditions of hire. A refusal by an employer to increase benefits beyond that provided by the employment contract does not give the employee sufficient cause to voluntarily quit his employment. However, a reduction of benefits by an employer will provide good cause for voluntarily leaving one's employment without disqualification from unemployment compensation benefits. [General Statutes] § 31-236 (a) (2) (A) (i). Labor disputes are analogous since striking employees attempting to extract additional concessions through the leverage of a strike are ineligible for benefits, but employees seeking to remain in work under mutually established working conditions will be eligible for benefits if the employer fails to provide employment under the terms of the agreement."

Our interpretation also is consistent with the general purpose of the state's statutory scheme of unemployment compensation: "[T]he act is remedial and, consequently, should be liberally construed in favor of its

beneficiaries. . . . Indeed, the legislature underscored its intent by expressly mandating that the act 'shall be construed, interpreted and administered in such manner as to presume coverage, eligibility and nondisqualification in doubtful cases.' General Statutes § 31-274 (c)." (Citation omitted.) *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act,* supra, 238 Conn. 278.

The plaintiff argues that the interpretation of the trial court was incorrect, however, because the arbitration provision automatically expired by operation of federal law and, therefore, could not be "current immediately prior" to the plaintiff's announcement. We are unpersuaded.

Our resolution of this claim is guided by the reasoning of the United States Supreme Court that, "under the [National Labor Relations Act], arbitration is a matter of consent, and that it will not be imposed upon parties beyond the scope of the agreement." *Litton Financial Printing Division* v. *National Labor Relations Board,* 501 U.S. 190, 201, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991). In that case, the court upheld the position taken by the National Labor Relations Board "that an arbitration clause does not, by operation of the [National Labor Relations Act] . . . continue in effect after expiration of a collective bargaining agreement." Id., 200. While continuing enforcement of an arbitration provision is not compulsory, however, under *Litton Financial Printing Division,* employers also are not precluded from continuing to comply with an arbitration clause of an expired agreement, and may consent to continuing enforcement of the provision. Id., 201. Pursuant to federal law, therefore, the plaintiff was permitted, *but not required,* to discontinue the arbitration provision at the expiration of the agreement. Accordingly, federal law would not have precluded the plaintiff from announcing that work would be available consistent with the last

mutually agreed upon terms and conditions, those being the terms and conditions of the expired agreement, including the arbitration provision.

We conclude that the terms and conditions current immediately prior to the plaintiff's announcement that work would be available were the conditions of the *expired agreement*, including the arbitration provision. By announcing that work would be available "under the terms and conditions of the expired contract except that . . . the right to invoke arbitration . . . would no longer be in effect," the plaintiff made work available only under terms and conditions that were less favorable than those current immediately prior to announcement. Accordingly, we affirm the trial court's determination that the employees were entitled to unemployment benefits based on the existence of a lockout pursuant to § 31-236 (a) (3) (C) (ii).

## II

The plaintiff next contends that § 31-236 (a) (3) (C) (ii), as interpreted by the administrator and the trial court, is preempted by federal law. Specifically, the plaintiff claims that the statute is preempted by the National Labor Relations Act, 29 U.S.C. § 151 et seq., because it interferes with areas that are comprehensively regulated by Congress including, inter alia, arbitration agreements between unions and employers. We disagree.

"The question of preemption is one of federal law, arising under the supremacy clause of the United States constitution. . . . Determining whether Congress has exercised its power to preempt state law is a question of legislative intent. . . . Express preemption occurs to the extent that a federal statute expressly directs that state law be ousted to some degree from a certain field." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 791, 712

A.2d 396, cert. denied, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). "Even when there is no express preemption, any proper application of the doctrine must give effect to the intent of Congress." *New York Telephone Co.* v. *New York State Dept. of Labor*, 440 U.S. 519, 540, 99 S. Ct. 1328, 59 L. Ed. 2d 553 (1979), citing *Malone* v. *White Motor Corp.*, 435 U.S. 497, 504, 98 S. Ct. 1185, 55 L. Ed. 2d 443 (1978).

The United States Supreme Court previously has addressed the issue of whether the National Labor Relations Act preempts states from providing unemployment benefits to striking workers. See *Baker* v. *General Motors Corp.*, 478 U.S. 621, 635, 106 S. Ct. 3129, 92 L. Ed. 2d 504 (1986); *New York Telephone Co.* v. *New York State Dept. of Labor*, supra, 440 U.S. 546–47. In *New York Telephone Co.* v. *New York State Dept. of Labor*, supra, 545, a plurality of the court rejected the argument that the act preempted a New York statute that provided unemployment benefits to employees on strike after eight weeks. On the basis of an extensive review of the legislative history of the Social Security Act and of the National Labor Relations Act, both enacted in the same summer, the court concluded that Congress had intended states to be free to pay unemployment benefits to striking employees. Id., 540–46. "In an area in which Congress has decided to tolerate a substantial measure of diversity, the fact that the implementation of this general state policy affects the relative strength of the antagonists in a bargaining dispute is not a sufficient reason for concluding that Congress intended to preempt that exercise of state power." Id., 546. In *Baker* v. *General Motors Corp.*, supra, 635, the United States Supreme Court reiterated its conclusion that states have discretion to provide for unemployment benefits in the context of a labor dispute by upholding a Michigan statute that disqualified employees from unemployment compensation for financing a strike by emergency union

dues. The court stated that *"New York Telephone Co.* makes it clear that a State may, but need not, compensate actual strikers even though they are plainly responsible for their own unemployment. And, on the other hand . . . it [is] equally clear that a State may refuse, or provide, compensation to workers laid off by reason of a labor dispute in which they have no interest or responsibility whatsoever. In between these opposite ends of the spectrum are cases in which the furloughed employees have had some participation in the labor dispute that caused their unemployment." Id.

Section 31-236 (a) (3) (C) (ii) falls within the realm of discretion provided to the states by Congress to award unemployment benefits to workers unable to work as the result of a labor dispute. This statute does not regulate the conduct of the parties as extensively as did the statute permitted in *New York Telephone Co.* Unlike the New York statute, § 31-236 (a) (3) (C) (ii) does not provide unemployment benefits to all striking workers, only to those workers whose strike has been converted to a lockout. Moreover, under § 31-236 (a) (3) (C) (ii), striking employees are eligible to receive benefits only if they are willing to return to work under the terms of the last mutually agreed upon employment agreement. The employer has the right to choose not to agree to all the previous terms, in which case, under the statute, a lockout exists. In short, § 31-236 (a) (3) (C) (ii) neither requires nor prohibits an employer or employees from continuing to operate under the terms of their previous agreement. If striking employees are willing to return to work under the terms of the prior agreement pending negotiation of a new agreement, and the employer is not willing to agree, the statute provides for unemployment benefits to the employees.

In support of its claim, the plaintiff suggests that the present case is akin to *Nash* v. *Florida Industrial Commission,* 389 U.S. 235, 88 S. Ct. 362, 19 L. Ed. 2d

438 (1967), and *United Steelworkers of America AFL-CIO-CLC* v. *Johnson,* 830 F.2d 924 (8th Cir. 1987). In those cases, state unemployment statutes were determined to be preempted by provisions of the National Labor Relations Act. The state statutes in both of those cases, however, were preempted because they denied unemployment benefits to persons who had exercised rights directly protected by the National Labor Relations Act. See *Nash* v. *Florida Industrial Commission,* supra, 239 (Florida statute rendering employee ineligible for unemployment compensation because employee had filed unfair labor practice complaint preempted by National Labor Relations Act, which protects right to file unfair labor practice charge); *United Steelworkers of America AFL-CIO-CLC* v. *Johnson,* supra, 929 (South Dakota statute granting unemployment compensation to nonunion employees but not to union employees in labor dispute, regardless of willingness to work, preempted by National Labor Relations Act, which protects right to participate in organized labor). Those cases do not affect our analysis here, because, unlike the statutes at issue in *Nash* and *United Steelworkers of America AFL-CIO-CLC,* § 31-236 (a) (3) (C) (ii) makes no distinction between persons based on their exercise of rights protected under the National Labor Relations Act in determining eligibility for unemployment benefits.

Accordingly, we conclude that the trial court's interpretation of § 31-236 (a) (3) (C) (ii), which we today affirm, is not preempted by the provisions of the National Labor Relations Act.

The judgment is affirmed.

In this opinion the other justices concurred.