[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this application against LM Bridgeport, LLC (LM), the owner and lessor of a building in Bridgeport. The plaintiff seeks to conduct air quality testing in the leased area of the building in which she works. The lessee of the building is the State of Connecticut. The Department of Social and Human Services (DSHS), by whom the plaintiff is employed, occupies the space. The plaintiff has also named the State, DSHS and the Department of Public Works (collectively referred to herein as the State) as defendants to this proceeding. They move to dismiss the complaint based on sovereign immunity, failure to exhaust administrative remedies and lack of standing.
The plaintiff alleges that she has worked in the building for four years and has consistently suffered from various pulmonary illnesses which have become progressively worse over time. She alleges that she is presently on sick leave. She also alleges that many other persons who have worked in the building suffer from various pulmonary illnesses and that they have had to utilize their sick leave as well as vacation time because of their pulmonary ailments. The plaintiff contends that continued daily exposure to the ambient air in the building is hazardous to her and all other persons in the building. She seeks to have the air quality tested by a licensed independent laboratory. The State and LM have refused to give her permission to do this. The purpose of the testing, she alleges, is to determine whether the air quality in the building is a danger to the health of its occupants. Without the testing, she claims, she will be unable to obtain the relief to which she and others are entitled, including "damages for potential long term health related affects." The complaint is accompanied by the plaintiff's affidavit which supports the allegations of her complaint. The plaintiff's complaint also seeks reimbursement for the costs of the testing and attorneys fees.
The matter came before the court prior to the return date on an order to show cause. The defendant LM failed to appear. At the time of the CT Page 15370 hearing, the State filed its motion to dismiss.
The motion to dismiss is based on (1) the doctrine of sovereign immunity, (2) the plaintiff's failure to exhaust administrative remedies and (3) the plaintiff's lack of standing.
"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Martinez v. Dept. of Public Safety,258 Conn. 680, 683, 784 A.2d 347 (2001). The Supreme Court "has long recognized the common law principle that the state cannot be sued without its consent." Sentner v. Board of Trustees, 184 Conn. 339, 342,439 A.2d 1033 (1981). So too, the failure to exhaust administrative remedies implicates the subject matter jurisdiction of the court and is properly raised by a motion to dismiss. Trigila v. Hartford, 217 Conn. 490,493-94, 586 A.2d 605 (1991); see also Hartford v. Hartford MunicipalEmployees Assn., 259 Conn. 251, 283-83, 788 A.2d 60 (2002) (failure to exhaust grievance procedure under collective bargaining agreement deprives court of subject matter jurisdiction). Finally, it is settled that the issue of standing implicates the court's subject matter jurisdiction; In re Jonathan M., 255 Conn. 208, 217, 764 A.2d 739
(2001); and is properly raised by a motion to dismiss. Gill v. Diorio,51 Conn. App. 140, 144, 720 A.2d 526 (1998).
 I A.
Initially, it is appropriate to determine the nature of the proceeding that the plaintiff has brought. At the hearing on the order to show cause, the plaintiff withdrew her claims for monetary relief, specifically for reimbursement of expenses for air testing and legal fees. She claimed that the proceeding was one for equitable relief. In response, the court queried the assistant attorney general as to whether the proceeding might be a bill of discovery. In the plaintiff's reply brief, the plaintiff asserts, for the first time, that this indeed is the nature of the proceeding she has commenced. The court agrees.
In Berger v. Cuomo, 230 Conn. 1, 644 A.2d 333 (1994), the Supreme Court explained the nature of the bill of discovery: "The bill of discovery is an independent action in equity for discovery, and is designed to obtain evidence for use in an action other than the one in which discovery is sought. Peyton v. Werhane, 126 Conn. 382, 389, 11 A.2d 800 (1940). As a power to enforce discovery, the bill is within the inherent power of a court of equity that has been a procedural tool in use for centuries. See CT Page 15371Middletown Bank v. Russ, 3 Conn. 135, 140 (1819); F. James G. Hazard, Civil Procedure (2d Ed. 1977) § 1.4, pp. 12-13; 2 Z. Swift, A Digest of the Laws of the State of Connecticut (1823) p. 210; 1 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) §§ 142, 144, 190a, 191, 195. The bill is well recognized and may be entertained notwithstanding the statutes and rules of court relative to discovery. 1 J. Pomeroy, supra, 193. Furthermore, because a pure bill of discovery is favored in equity, it should be granted unless there is some well founded objection against the exercise of the court's discretion. Pottetti v. Clifford,146 Conn. 252, 257, 150 A.2d 207 (1959); Peyton v. Werhane, supra, 389.
"To sustain the bill, the petitioner must demonstrate that what [she] seeks to discover is material and necessary for proof of, or is needed to aid in proof of or in defense of, another action already brought or about to be brought. Pottetti v. Clifford, supra, 146 Conn. 258. Although the petitioner must also show that [she] has no other adequate means of enforcing discovery of the desired material, `[t]he availability of other remedies . . . for obtaining information [does] not require the denial of the equitable relief . . . sought.' Id., 262. This is because a remedy is adequate only if it `is one which is specific and adapted to securing the relief sought conveniently, effectively and completely. State ex rel.Heimov v. Thomson, 131 Conn. 8, 13, 37 A.2d 689 [1944]; Brainard v. WestHartford, 140 Conn. 631, 635, 103 A.2d 135 (1954).' Id. The remedy is designed `to give facility to proof.' Id., 259.
"Discovery is confined to facts material to the plaintiff's cause of action and does not afford an open invitation to delve into the defendant's affairs. Carten v. Carten, 153 Conn. 603, 613, 219 A.2d 711
(1966); Pottetti v. Clifford, supra, 146 Conn. 259. A plaintiff must be able to demonstrate good faith as well as probable cause that the information sought is both material and necessary to [her] action.Pottetti v. Clifford, supra, 259. A plaintiff `should describe with such details as may be reasonably available the material [she] seeks . . . and should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to [her] case.' Id., 263. What is reasonably necessary and what the terms of the judgment require call for the exercise of the trial court's discretion. Sinclair Refining Co. v. Jenkins PetroleumProcess Co., 289 U.S. 689, 696-97, 53 S.Ct. 736, 77 L.Ed. 1449 (1933)." (Emphasis added.) Id., 5-7.
While at early common law a bill of discovery could not be maintained against persons who were not parties to "the original suit" nor prospective parties to an intended suit, Connecticut has not so limited the bill of discovery. Pottetti v. Clifford, supra, 146 Conn. 260. CT Page 15372
Whether the plaintiff originally characterized the nature of her petition accurately, or even knew the technically correct moniker for it, is not dispositive. United Components, Inc. v. Wdowiak, 239 Conn. 259,264, 684 A.2d 693 (1996). "The interpretation of pleadings is always a question of fact for the court. . . . the modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirely in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66,82-83, 700 A.2d 655 (1997).
The hearing before the court proceeded on the plaintiff's theory that what she wanted was access to premises for air testing. There can be little doubt that the plaintiff's claims for monetary relief would have been barred as against the state[1] by the doctrine of sovereign immunity. However, she withdrew these claims at the hearing to show cause. While a plaintiff cannot amend a complaint to add facts without which the complaint would be vulnerable to a claim of immunity; Gurliacciv. Mayer, 218 Conn. 531, 544-45, 590 A.2d 914 (1991);[2] there is a qualitative difference between adding allegations to save a complaint and withdrawing claims for relief subject to immunity from an application that is otherwise sound. Such claims, functionally become surplusage. It is an ancient rule that a declaration that is substantially sound is not vitiated by matters of surplusage. Holbrook v. Judd, 1 Root 456 (1792); see New Haven Water Co. v. Russell, 86 Conn. 361, 366-67, 85 A. 636
(1912); Hoyt v. Seeley, 18 Conn. 353, 357-58 (1847); Woodford v.Webster, 3 Day 472, 475 (1809); Olmsted v. Doty, 2 Root 184, 185 (1795). This remains the rule today. Drummond v. Hussey, 24 Conn. App. 247,248-49, 588 A.2d 223 (1991).
There is no element of surprise or prejudice to the state. In its Reply Memorandum of October 15, 2002, the state, in effect, acknowledges that the application before the court is a bill of discovery. The court holds that the nature of application is indeed a bill of discovery.
 II CT Page 15373
The central issue is, thus, whether a bill of discovery directed against the state is subject to sovereign immunity. Since there is little doubt that a subsequent civil action for ages against the state would be barred by the doctrine of sovereign immunity, its is necessary to determine whether there probable cause that the plaintiff would ultimately be entitled relief from any other party, specifically LM.
 A.
A bill of discovery will not be granted where it appears that even if it were, the plaintiff would not be entitled to the monetary or injunctive relief he ultimately seeks. Norwich W.R. Co. v. Storey,17 Conn. 364, 370 (1845); Middletown Bank v. Russ, 3 Conn. 135, 140
(1819); 2 Z. Swift, supra, 208-09. "[T]he plaintiff who brings a petition for a bill of discovery must demonstrate by detailed facts that there is probable cause to bring a potential cause of action; he must show more than a mere suspicion. . . . He also must show that there is some describable sense of wrong. . . . The plaintiff must demonstrate good faith that the information sought is material and necessary to his action. . . . Just what is reasonably necessary is within the trial court's broad discretion. . . . Falco v. Institute of Living,254 Conn. 321, 332, 757 A.2d 571 (2000), emphasizes the need to present evidence regarding the dearth of alternative means of obtaining the desired information other than disclosure by the defendant. Lack of such evidence lends credence to the conclusion that the petition is being employed as an alternative to diligent investigation. Id. Falco further informs us that merely alleging that there are no other adequate means of enforcing discovery of the desired material is not sufficient to satisfy the burden." (Citations omitted; internal quotation marks omitted.) CadleCo. v. Drubner, 64 Conn. App. 69, 73, 777 A.2d 1286 (2001).
"Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for presenting an action. . . . Its existence or nonexistence is determined by the court on the facts found." (Internal quotation marks omitted.) Bergerv. Cuomo, supra, 230 Conn. 7.
The plaintiff established that for several years, she and two other state employees who worked in the building, who also testified, have suffered from respiratory and other ailments and that their conditions improved when they remained out of the building for a extended periods of time. This testimony was compelling. The plaintiff further established that the building has considerable water damage and that when she is in the building she breathes a great deal of dust. CT Page 15374
The plaintiff introduced the lease between the state and LM for two floors of the building. In paragraph 11 of the lease, LM covenants to "maintain the demised premises and any and all equipment, fixtures, and appurtenances, whether severable or not, furnished by the LESSOR under this lease in good repair and tenantable condition, except in case of damage arising from the act or negligence of the LESSEE, its officers, agents and employees." Because LM, as landlord, retained a duty to maintain the premises, the plaintiff has shown probable cause that, as employee of the lessee, she may recover damages against LM. Tammany v.Wooldbridge Bros., Inc., 240 F.2d 641, 642-43 (2d Cir. 1957); Killian v.Logan, 115 Conn. 437, 162 A. 30 (1932).[3]
 B.
The state contends that even if the present proceeding is a bill of discovery, it is barred by the doctrine of sovereign immunity, although the plaintiff does not seek monetary relief against the state.
"We have long recognized the common-law principle that the state cannot be sued without its consent." (Internal quotation marks omitted.) Canningv. Lensink 221 Conn. 346, 349, 603 A.2d 1155 (1992). "Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. . . . In a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts. . . . When a state official's acts are in excess of legal authority or constitute an erroneous exercise of that authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine . . . Therefore, [t]he state is subject to suit without consent . . . in a suit for injunctive relief when the action does not defeat the purpose of the doctrine of sovereign immunity by undue interference with governmental functions." (Citations omitted; internal quotation marks omitted.) Pamela B. v. Ment,244 Conn. 296, 328, 709 A.2d 1089 (1998).
In asserting its claim of sovereign immunity, the state relies predominantly on Herzig v. Horrigan, 34 Conn. App. 816, 644 A.2d 360
(1994). Herzig held that lottery winnings of a private party being held by a public officer of the State were not subject to garnishment and execution. The court found telling the observations of another court over 150 years earlier, Stillman v. Isham, 11 Conn. 124 (1835). CT Page 15375
"In Stillman, the defendant, a state's attorney, in his official capacity, had sued for and received the value of an alleged arsonist's forfeited bail bond. The General Assembly had meanwhile passed a resolution that this money should be paid over to the arsonist's victim, whose store had been damaged in the fire. As soon as the defendant received the money due on the bond, but before he had paid it to the victim, however, a creditor of the victim attempted to attach that sum by serving process on the defendant. The court decided that, although the statute permitting foreign attachment was designed to prevent the fraudulent concealment of property, and should thus be construed liberally, a public officer who is bound to transact the public business should not be susceptible to `the expense, the inconvenience and hazard incident' to the process of foreign attachment. [Stillman v. Isham, supra 11 Conn.] 127. The court further stated: `It is apparent, that if this process is allowed, it must destroy the simplicity of the mode of accounting. Instead of the receipt of the person who is entitled to the money, the officer must produce . . . and verify the process under which it was paid. He must then run the risk of any mistaken opinion as to its legality, or await the slow proceedings of judicial decisions. He may have to meet and decide upon conflicting claims of creditors as to their priority; and may be called to appear in remote parts of the state, to the injury of the public business, with some expense and great inconvenience to himself. These objections exist in the case of all public officers, whether they are loan officers, county treasurers, administrators or state's attorneys.' Id. The court thus held that sovereign immunity prevented the plaintiff from using the process of foreign attachment to obtain funds due a judgment debtor held by a public official in his official capacity as state's attorney." Herzig v. Horrigan, supra,34 Conn. App. 820-21.
The Herzig court, concerned with the effect of allowing the garnishing and execution of lottery winnings, was impressed that "[t]he number of potential judgment debtors whose funds may be held by the state is immense. There are thousands of state vendors who may be putative judgment debtors and many lesser winners of the state lottery, as well as potential weekly winners of it, and potential daily winners of the various gaming prizes established by the state, each of whom may be a judgment debtor. Until such time as the legislature grants judgment creditors the right to reach such sums held by the state for such winners and vendors, the courts should continue to apply the doctrine of sovereign immunity." (Footnote omitted.) Id., 821-22.
If Herzig sits just over the line demarcating the state's sovereign immunity from its amenability to suit, Clancy v. Bristol, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CT Page 15376 CV 94 0545162S (May 8, 1995, Allen, J.) (14 Conn.L.Rptr. 247), sits squarely on the other side of that line. Clancy was a dispute between the plaintiffs and the named defendant as to who, owned a winning lottery ticket. "In the first count [of their complaint] the plaintiffs named the State of Connecticut and Bristol by way of an interpleader action. In that regard their claim for relief request[ed] `an interlocutory judgment of interpleader to enter: (a) requiring the plaintiffs and defendant Bristol to interplead their claim to the funds now in the hands of the defendant state of Connecticut; and (b) that upon payment of the funds, as they become due, by the defendant State to such person as the Court may order, that the State be discharged of all liabilities to such claimants with reference thereto.'" Id., 247-48. The State moved to dismiss on the basis of sovereign immunity, citing Herzig v. Horrigan,
supra, 34 Conn. App. 816. The court (Allen, J.) stated that while it was "aware that lottery funds are not subject to garnishment, this is not a case which is seeking garnishment. It is an equitable action in which the plaintiffs are seeking a determination of the rightful owners to the property being held by the State. Our Supreme Court has stated that the State cannot use sovereign immunity as a defense in an action for declaratory or injunctive relief. Krozser v. New Haven, 212 Conn. 415,421. `We have excepted declaratory and injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford an opportunity for voluntary compliance with the judgment.' Doev. Heintz, 204 Conn. 17, 31.
"This action of interpleader does not seriously interfere with any governmental function, nor does it impose any fiscal burden on the state. In an action for interpleader the State, as the stakeholder of the disputed funds, does not remain a party to the action once it has deposited the funds in accordance with a court order. General Statutes § 52-48, the interpleader statute, provides:
"`Whenever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons, either he, or any of the persons claiming the same, may bring a complaint in equity, in the nature of a bill of interpleader, to any court which by law has equitable jurisdiction of the parties and amount in controversy, making all persons parties who claim to be entitled to or interested in such money or other property . . .'
"The court holds that the doctrine of sovereign immunity does not apply where the State, although named as a defendant, is not an actual or interested adverse party. Glassman v. Glassman, 309 N.Y. 436,131 N.E.2d 721 (N.Y. 1956); Godfrey v. Board of Chosen Freeholders,
CT Page 1537765 N.J. Super. 213, 167 A.2d 221 (N.J.Super.Ct. Law Div. 1961)." Clancyv. Bristol, supra, 14 Conn.L.Rptr. 248.
Unlike Herzig, there is no danger here of entangling the State in an immense number of claims. A device will be placed in the premises of one building for a relatively brief period of time under circumstances that the court will ensure do not unduly interfere with governmental functions. As observed supra, "[t]he state is subject to suit without consent . . . in a suit for injunctive relief when the action does not defeat the purpose of the doctrine of sovereign immunity by undue interference with governmental functions." (Citations omitted; internal quotation marks omitted.) Pamela B. v. Ment, supra, 244 Conn. 328. The Connecticut Supreme Court has "excepted declaratory and injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford an opportunity for voluntary compliance with the judgment . . . Furthermore, trial courts can avoid undue interference with governmental functions by tailoring injunctive relief and scrupulously weighing the equities." (Citations omitted; internal quotation marks omitted.) Id., 330.
Accordingly, sovereign immunity is not a bar to the plaintiff's bill of discovery. "In a proper equitable suit, a public instrumentality, though not party to anticipated litigation, may be compelled to make information available to a private plaintiff." Wolfe v. Massachusetts PortAuthority, 366 Mass. 417, 319 N.E.2d 423, 425 (1974). In Wolfe, an attorney brought a bill in equity against the Massachusetts Port Authority seeking toll receipts and tickets collected during a one hour period on the Tobin bridge in an effort to identify the identity of a tractor-trailer that had struck and injured his client. Id., 424. The Authority's "entire character is public, not private," said the court. Id., 425. The court held that the injured party was entitled to discovery from the Authority even though it was not expected to be a party to the anticipated litigation.
The State and its officials cannot interpose a blanket refusal to provide information to a prospective litigant to a suit against a private party anymore than it can refuse to comply with a subpoena or to submit to a pretrial deposition. See, e.g., U.S. v. Meyer, 113 F.2d 387, 397 (7th Cir. 1940), cert. denied, 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed.2d 459
(1940); Leyh v. Modicon, Inc., 881 F. Sup. 420, 422-24 (S.D.Ind. 1995); see also Lefebvre v. Somersworth Shoe Co., 93 N.H. 354, 41 A.2d 924,926-27 (1945). "It is the duty of every witness . . . to respond to a subpoena and, unless privileged, to testify to factual matters relevant to a controversy. If the rule was otherwise, the trial of causes in the CT Page 15378 courts would be seriously impeded." Thomaston v. Ives, 156 Conn. 166,172, 239 A.2d 515 (1968). Exceptions "to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." United States v. Nixon,418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1994).
Because the plaintiff's pure bill of discovery no longer contains a claim for damages and the equitable relief sought will visit little if any inconvenience on the state, the plaintiff's application is not defeated by the doctrine of sovereign immunity.
 II
The State's motion to dismiss also asserts that the court lacks jurisdiction because the plaintiff failed to exhaust the grievance and arbitration remedies available to her under a collective bargaining agreement between the State and the union to which she belongs.
"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. . . . The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective [bargaining] agreements. . . .
"Despite the important public policy considerations underlying the exhaustion requirement, we have grudgingly carved several exceptions from the exhaustion doctrine. . . . We have recognized such exceptions, however, only infrequently and only for narrowly defined purposes. . . . One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile or inadequate. (Citations omitted; internal quotation marks omitted.) Hunt v. Prior,236 Conn. 421, 432, 673 A.2d 514 (1996). CT Page 15379
The State submitted an affidavit from Robert Curtis, the Assistant Director of Labor Relations for the State of Connecticut, in which he avers that the plaintiff is a member of a bargaining unit that is represented by the American Federation of State, County and Municipal Employees (AFSCME). AFSMCE and the State of Connecticut executed a collective bargaining agreement that covers the terms and conditions of the employment of its members. The agreement, moreover, contains a grievance procedure by which the union or union members may themselves file grievances for breach of the agreement. The plaintiff did not file a grievance concerning the denial of her request for air testing in the building in which she works.
The State claims that the air testing which the plaintiff seeks is governed by article 22 of the collective bargaining agreement which deals with safety.[4] The plaintiff claims, and the State concedes, however, that the collective bargaining agreement has expired. Indeed, it expired prior to the plaintiff's bringing of this application. Article 49 of the collective bargaining agreement provides: "This Agreement covers the period July 1, 1999 to June 30, 2002." The agreement does not contain an automatic renewal provision. See, e.g., Martin J. Kelly, Inc. v. LocalUnion 677, 152 Conn. 276, 278, 206 A.2d 417 (1964); InternationalBrotherhood of Teamsters v. Trudon Platt Motor Lines, Inc.,146 Conn. 17, 22, 147 A.2d 484 (1958). As the State further concedes, while certain terms of a collective bargaining agreement to which the State is a party survive the agreement's expiration, pursuant to General Statutes § 5-278a,[5] safety is not one of them.
"Because the purpose of arbitration is to prevent litigation, it is favored by the law and is to be encouraged as the manner of settling disputes." Housing Authority v. Local 1303-260, Council 4, AFSCME,56 Conn. App. 786, 791, 746 A.2d 217 (2000). "[The] authority to arbitrate, however, is strictly limited. The limits of authority are set by the provisions of the bargaining agreement itself. . . ." Board ofPolice Commissioners v. Maher, 171 Conn. 613, 621, 270 A.2d 1076 (1976). Here, the bargaining agreement defines grievance, in Article 15, "as, and limited to, a written complaint involving an alleged violation or a dispute involving the application or interpretation of a specific provision of this Agreement."
The resolution of this claim is guided by the reasoning of the United States Supreme Court in Litton Financial Printing Division v. NationalLabor Relations Board, 501 U.S. 190, 201, 111 S.Ct. 2215, 115 L.Ed.2d 177
(1991); see also Church Homes, Inc. v. Administrator, UnemploymentCompensation Act, 250 Conn. 297, 307, 735 A.2d 805 (1999). In Litton, the named plaintiff, the operator of a check printing plant, entered into a CT Page 15380 collective bargaining agreement with the union representing its production employees (the "Union") requiring, in pertinent part, that all differences as to contract construction or violations be determined by arbitration, and that employee grievances that could not be resolved under a two-step grievance procedure be submitted for binding arbitration. The agreement expired in October 1979, whereupon Litton laid off ten of its plant workers without notice to the Union. The Union then filed grievances on behalf of the laid-off employees. Litton refused to submit to the grievance or arbitration procedures, a position the National Labor Relations Board ("NLRB") later interpreted as a refusal to arbitrate under any circumstances. The NLRB held that Litton's refusal to process the grievances and unilateral refusal to arbitrate were unfair labor practices, in violation of the National Labor Relations Act,29 U.S.C. § 158 (a) (1) and (5). But, the NLRB found that disputes concerning the actual post-expiration layoffs did not "arise under" the expired contract and, hence, were not arbitrable. See Litton FinancialPrinting Division v. National Labor Relations Board, supra,501 U.S. at 194-96.
Both Litton and the Union appealed aspects of the NLRB's order to the Ninth Circuit, and Litton eventually petitioned for a writ of certiorari. The Supreme Court granted review solely with respect to the question of the arbitrability of the layoff grievances. See id., 197-98. It ultimately ruled that the layoff dispute did not arise under, and consequently was not covered by, the expired agreement. See id. at 209-10. However, in reaching its conclusion, the Litton Court reiterated support for the holding in Nolde Brothers, Inc. v. Bakery Workers,430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), in which the Court found a presumption in favor of post-expiration arbitration of matters and disputes "arising out of the relation governed by the contract."Litton Financial Printing Division v. National Labor Relations Board,
supra, 501 U.S. at 204. The Litton Court explained that post-expiration grievances arise under the contract, and are therefore arbitrable: (1) when the dispute "involves facts and occurrences that arose before expiration;" (2) when post-expiration action "infringes a right that accrued or vested under the agreement;" or (3) when "under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." Id., 206.
The Litton Court specifically instructed lower courts faced with post-expiration disputes to determine whether parties had agreed to arbitrate these disputes — i.e., to determine arbitrability — even if that analysis requires the court to interpret the arbitration agreement, a task normally remitted to an arbitrator under a broad arbitration clause. See id. at 208-09; see also CPR (USA), Inc. v.CT Page 15381Spray, 187 F.3d 245, 255 (2d Cir. 1999)
Here, the State has failed to provide the court with any analysis of the Litton criteria and, indeed, the record appears inadequate for such a determination. For this reason, the State has not met its burden of persuasion that the plaintiff was obliged to invoke the grievance and arbitration procedure of the now-expired collective bargaining agreement and, thus, failed to exhaust her remedies thereunder. The State's claim that the plaintiff failed to exhaust this remedy fails.[6]
 III
Finally, the State claims that the plaintiff lacks standing to bring this proceeding. This claim is based on the State's contention that the plaintiff's union is the exclusive agent for addressing terms and conditions of her employment. See General Statutes § 5-271 (b).[7]
"Once a union has been selected as a collecting bargaining representative," the State argues, "the employee loses her right to order her relations with her employer." Because the plaintiff seeks discovery of information in connection with anticipated litigation against LM, a private party who is not a signatory to the collective bargaining agreement, the court is not persuaded that the plaintiff's bill of discovery in anticipation of litigation with the State's landlord is a reordering of her employment relations. The State does not claim that LM was a party to the collective bargaining agreement with the plaintiff's union and, hence, bound by its provisions. In any event, that agreement has expired.
As is also discussed supra note 6, however, "the petitioner must also show the [s]he has no other adequate means of enforcing discovery of the desired material. . . ." Berger v. Cuomo, supra, 230 Conn. 6. The defendants have refused to give the plaintiff access to the building for testing. The State has pointed to no other provision in the law whereby the plaintiff may obtain the data she seeks. Nor has the court divined such a method. The court, therefore, finds that the plaintiff has shown that she has no other adequate means of enforcing discovery of the desired information.
At the hearing on the order to show cause, the State also argued that the court lacks jurisdiction because the plaintiff lacks standing to bring this proceeding on behalf of her coworkers. This claim is based on the plaintiff's allegations in application that others in the building have also become ill from their continued exposure to the air in the building, and have used sick leave and vacation time because of their ailments. In addition, the plaintiff alleges that "the purpose of said CT Page 15382 testing would be to determine whether the air quality within the building is a danger to the health and well being of this plaintiff and others who have consulted with her and other employees located within the building." The plaintiff also states that "[w]ithout independent air quality samples, the plaintiff, as well as those other persons who have health related conditions, are unable to obtain the relief to which they are entitled. . . ."
The plaintiff's entitlement to a bill of discovery is not defeated by matters of surplusage in her complaint. As observed supra, a pleading that is substantially sound is not vitiated by matters of surplusage. See, e.g., New Haven Water Co. v. Russell, supra, 86 Conn. 366-67; Hoytv. Seeley, supra, 18 Conn. 357-58. It is enough that the plaintiff has established that she, alone, is aggrieved. Protect Hamden/North Havenfrom Excessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 529 n. 3, 600 A.2d 757 (1991); Nowicki v.Planning Zoning Board, 148 Conn. 492, 495, 172 A.2d 386 (1961);DeRito v. Zoning Board of Appeals, 18 Conn. App. 99, 103, 556 A.2d 632
(1989).
Treating the plaintiff's complaint as a bill of discovery, the motion to dismiss is denied. The plaintiff and the State shall confer on the method by which the testing the plaintiff seeks may be accomplished as unobtrusively and with as little interference with the operation of the Department of Social and Human Services in the building as is possible. If the parties are unable to reach an agreement they shall advise the clerk and the court will enter further orders. The court withholds the entry of judgment until that time.
BY THE COURT
 ___________________ Bruce L. Levin Judge of the Superior Court