[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This is an appeal from the granting of Unemployment Compensation benefits. The Board of Review by mailing of October 26, 1998, affirmed the decision of the Employment Security Appeals Referee finding, for the purposes of this appeal, an affirming of the Referee's granting of benefits to the employee-applicant. The Administrator appeals this decision to the Superior Court.
The standard for judicial review, most recently reaffirmed by the Supreme Court in Church Homes v. Administrator, Unemployment Compensation Act, 250 Conn. 297, 303 (1999) is as follows: "Whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically follow from such facts. Although the Court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."
 I. FACTS 
The Board of Review reviewed the record in this appeal, including the tape recording of the Referee's hearing. The Board of Review adopted the Referee's finding of fact, with some modifications. CT Page 625
The finding of fact in essence states that the employee, a physician, was employed by the employer, a Dr. Kellan, from September 1995 until discharge on June 10, 1996. The claimant employee was not addicted to the use of narcotic substances at the time he first began working for Dr. Kellan. He became addicted to the use of cocaine at some uncertain time during the course of his employment by Dr. Kellan. The claimant made serious mistakes in diagnosis and in prescribing medication. He did not partake of narcotic substances while physically on duty at Dr. Kellan's medical office. He did partake of cocaine on several occasions during the early evening hours. By the contract he was to make himself available for call coverage on nights, weekends and holidays as stipulated by the employer.
There were times when the claimant was under the influence of narcotic substances when he was required to be available on call to provide emergency medical care and treatment for his patients. At times in the office he exhibited behavior consistent with that of an individual who is under the influence of drugs. On May 17, Dr. Kellan advised the claimant that he was discharging him on or about June 15, 1996 for poor job performance. On June 10, 1996 Dr. Kellan received a telephone call from the claimant's psychotherapist advising him that the claimant was actively addicted to cocaine and it would be necessary for him to enter into a detoxification facility. Dr. Kellan discharged the claimant upon receipt of that notice.
The Appeals Referee concluded that the errors which the claimant made were directly related to the fact that his judgment was impaired by his use of cocaine, and that, using the analogy of alcoholism, the claimant's conduct "lacks the degree of intentional or reckless indifference essential to a finding of willful misconduct." The Referee further concluded, "Credible testimony taken from the claimant at the hearing of this appeal leads this Referee to believe that the claimant was "in denial' concerning his addiction to narcotics during the final months of his employment by Dr. Kellan."
Although the court cannot locate a copy of the Administrator's motion to correct the finding, it is obvious from the Administrator's brief dated March 3, 2000 that such a motion was made and was granted in part and denied in part. The Administrator sought an addition to the finding that "the claimant, a physician, was aware of the effects that a narcotic substance can have on an individual's judgment and performance, yet used a narcotic substance while on call for the employer." The Administrator further requested that the Board add to the finding that the "claimant was aware that, as a doctor, he was obligated to disclose any circumstances which could adversely affect his ability to perform his medical obligations." The Administrator's memorandum of March 3, 2000 CT Page 626 concerning corrections states that the Board explained that the claimant was in denial as to his addiction and stated that the Administrator raised a legal argument in the context of his motion."
 II. REQUESTED CORRECTIONS 
A review of the transcript, p. 64, 62 clearly reveals that there was evidence at the hearing before the Appeals Referee that the claimant was "in denial" that the use of the drug was "a problem." The testimony before the Referee was, in essence, "Yes, you know, as you are actively using or, you know, semi-actively using you deny it and say it's not a problem. . . ." The claimant, a physician, was able to furnish to the Administrator a fairly precise explanation of "denial' including the ability of the brain to suppress knowledge "no matter how much knowledge you have."
The Appeals Referee found that the claimant "repeatedly denied being addicted to cocaine because the claimant did not believe that he was addicted to this narcotic substance." (Appeals Referee Decision, p. 3). The Board of Review concurred in the finding of the Referee, stating that "we have continued to recognize that alcoholism and drug addiction are chronic, progressive, multi-variant diseases categorized by denial . . ."(Board decision, p. 2).
The requested addition to the finding of fact adds nothing to a resolution of the issues in this appeal. The very term "denial" as used in the context of addiction pre-supposes that there is a knowledge of facts which are subconsciously suppressed by the subconscious mental processes of the brain. Enveloped within the conclusion of denial is the fact of subconsciously suppressed knowledge. There was ample evidence before the Referee to support his, and the Board's, conclusion of "denial". Hence the Board had no duty to add the redundant fact of knowledge to the finding.
 III. THE EFFECT OF ADDICTION UPON VIOLATION OF RULES. 
General Statutes 31-236(2)(B) provides disqualification if the employee engages in . . . "willful misconduct in the course of his employment . . ." The Administrator asserts that the claimant engaged in a "knowing violation of a reasonable and uniformly enforced rule or policy of the employer." The Administrator argues that for the employee to have used cocaine during or outside the on duty office time involves a violation of the rule that the employee was to be on call at all times. Administrator cites Regulations of Connecticut State Agencies 21-236-26b which categorizes willful misconduct as the knowing violation of rules. CT Page 627
The Administrator claims that the claimant violated several of the rules of employment. First is the rule to be on call at all times. There is of course no evidence that the claimant was not physically available. However an argument can be made that because of his addiction he could not faithfully or accurately perform that duty. Second, that he failed to disclose his addiction to the employer. Again, there were no specific rules in either subject, but an argument can be made that these should be rules. However, as aforesaid, the Referee and the Board found that the employee was not aware of his problem due to addiction denial. All of these alleged rule violations are directed to the disqualification conduct of General Statutes § 31-236(2)(B).
Regulations of Conn. Sate Agencies § 31-236-27 states as follows:
 The Administrator shall consider addiction to alcohol or other drugs to be an illness. Where the Administrator finds that an individual was discharged for misconduct resulting from alcohol or drug usage and it is established, by competent medical or professional evidence or testing that the individual is physically addicted to alcohol or any other drug, such misconduct shall not be deemed intentional or deliberate or reckless and therefore shall not constitute willful misconduct under Section 31-236-26a.
The Board of Review found and concluded that the claimant was discharged for poor work performance that was not the result of misconduct, having found that the job performance was sub-standard due to addiction. It should be noted that the court, in reviewing the claimed errors of judgment allegedly made by the claimant in the rather routine aspects of the general practice find that it is reasonable to conclude, as did the Board, that there is a "nexus" between said illness and job performance. The Board of Review properly applied regulation 31-236-27 in concluding that the claimant's poor work performance was not the result of willful misconduct and that his consumption while on call was due to addiction These conclusions are reasonable and are a correct application of the law.
 IV. RELEVANCE AS TO THE ONSET OF ADDICTION 
The Administrator appears to wish to draw a distinction between whether the onset of addiction took place before or after commencement of employment. It appears that the Administrator claims that if the addiction started after the onset of employment then the initial taking of cocaine would be misconduct, whereas if the employee was addicted at the onset of employment then he would be protected by the addiction CT Page 628 regulation. The Administrator can cite no authority to support that position. If the regulation intended this to be a distinction the regulations would have said so. The Board properly did not draw such a distinction. General Statutes § 31-236a(14), which may disqualify persons who fail a mandatory drug-testing program, does not deal with the specific illness of addiction, and is of no support to the Administrator's position.
 V. THE PROPOSITION OF FELONIOUS CONDUCT 
The Administrator takes the position that a person who is drug dependent must have been in possession of the drug which caused the addiction and hence the claimant would be disqualified under General Statutes § 31-236(2)(B). That statute provides for disqualification if the employee had been "discharged or suspended for felonious conduct." Illegal possession of cocaine under General Statutes § 21a-279(a) is a felony, as is possession of a hallucinogenic substance under §21a-279(b).
Under the interpretation sought by the Administrator only addiction to substances the possession of which is not a felony would allow the application of the Addiction regulation. Without engaging in a dissertation as to the extent or intensity of addiction as concerns various drugs and controlled substances, suffice it to state that the Administrator's application of a felony criteria as an exception to the drug addiction regulation would cause the regulations to be of little meaning by eliminating drugs which are intensely addictive. This is not to say that felonious criminal conduct, such as embezzlement, burglary, larceny and the like as the cause of discharge would be protected by the regulation. That hypothetical is not an issue in this decision. Had the Regulation intended that only addiction caused by consumption of drugs the possession of which is not felonious is to be considered to be an illness for the purpose of unemployment compensation, thereby eliminating addiction caused by intensely addictive drugs the regulation would have said so. The Board properly did not conclude that possession of cocaine as a precursor of, or in support of an existing addiction, disqualifies the employee from the benefit of the regulation.
 VI. A CLAIM OF HEIGHTENED KNOWLEDGE OF ADDICTION BY A PHYSICIAN 
It is claimed that the employee, because he is a physician, should have a heightened or expert knowledge that consumption of cocaine can cause addiction. It is difficult to conceive in this day and age, that citizens who are able to read, write, watch television, or listen to radio are unaware that cocaine causes addiction. The claimant's status as a CT Page 629 physician does not exempt him from the application of the addiction illness regulation. The regulation draws no such distinction.
 VII. A CLAIM OF HEIGHTENED DANGER 
It appears to be claimed that because the claimant is a physician there is a heightened danger of injury to the public because of addiction. This line of reasoning would eliminate all health care professionals — nurses, x-ray technicians, ambulance operators, paramedics and the like from the benefit of the regulation so as to be consistent with a health care exemption. Yet almost everyone who deals with the safety of public, vehicle drivers etc., would fit that category of public danger. If one were to eliminate those who can affect the safety of others the regulation would have little meaning.
Suffice it is to state that if the regulation chose to exclude physicians from its protection for any of the reasons claimed in this appeal it could and would have done so in clear and definite terms. The Administrator, the Referee, and the Board are bound by the clear terms of the regulation as pertains to the circumstances of this case.
For the reasons set forth herein the decision of the Employment Security Board of Reviews, affirming the decision of the Appeals Referee, is affirmed.
L. Paul Sullivan, J.