STATE OF CONNECTICUT *v.* NORMAN EBENSTEIN ET AL.
(14266)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and SANTANIELLO, Js.

Argued May 30—decision released July 2, 1991

*Donald R. Holtman,* for the appellant (defendant Ebenstein and Ebenstein, P.C.).

*Edward F. Reynolds, Jr.,* assistant attorney general, with whom were *William J. Wholean,* assistant attorney general, and, on the brief, *Richard J. Blumenthal,* attorney general, for the appellee (state).

PER CURIAM. General Statutes § 17-83f (a)[1] gives the state a statutory lien on the proceeds of lawsuits pur-

[1] General Statutes § 17-83f provides in relevant part: "(a) In the case of causes of action of beneficiaries of aid under this chapter, subject to sub-

sued on behalf of recipients of unreimbursed public assistance. The dispositive issue in this appeal is whether an order requiring attorneys holding such proceeds to provide an accounting, so as to enable the state to enforce its § 17-83f (a) lien, is a final judgment from which the attorneys are entitled to take an immediate appeal.

The plaintiff, the state of Connecticut (state), brought this action seeking damages and injunctive relief from the defendants Norman Ebenstein and Ebenstein & Ebenstein, P.C. (attorneys), alleging that each of fifty-two named welfare clients had been represented by the

sections (b) and (c) of section 17-83e, or of a parent of a beneficiary of the aid to families with dependent children program, the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty per cent of the proceeds received by such beneficiary or such parent after payment of all expenses connected with the cause of action, whichever is less, for repayment under section 17-83e, and shall have priority over all other claims except attorney's fees for said causes, expenses of suit, costs of hospitalization connected with the cause of action by whomever paid over and above hospital insurance or other such benefits, and, for such period of hospitalization as was not paid for by the state, physicians' fees for services during any such period as are connected with the cause of action over and above medical insurance or other such benefits; and such claim shall consist of the total assistance repayment for which claim may be made under the provisions of this chapter. The proceeds of such causes of action shall be assignable to the state for payment of the amount due under said section 17-83e, irrespective of any other provision of law. Upon presentation to the attorney for the beneficiary of an assignment of such proceeds executed by the beneficiary or his conservator or guardian, such assignment shall constitute an irrevocable direction to the attorney to pay the commissioner of administrative services in accordance with its terms, except if, after settlement of the cause of action or judgment thereon, the commissioner of administrative services does not inform the attorney for the beneficiary of the amount of lien which is to be paid to the commissioner of administrative services within thirty days of receipt of the written request of such attorney for such information, such attorney may distribute such proceeds to such beneficiary and shall not be liable for any loss the state may sustain thereby."

For relevant purposes, the statute has not changed since it was enacted in 1984.

attorneys in a claim for damages as a result of which each claimant had become entitled to a sum of money. In response to the attorneys' contention that the state had been properly reimbursed by payments previously made, the state sought injunctive relief compelling the attorneys to provide information relevant to the calculation of the amount due the state.[2] The trial court granted the state's motion for partial summary judgment for this purpose. The attorneys[3] appealed to the Appellate Court and we transferred the appeal here pursuant to Practice Book § 4023. We now dismiss the appeal for lack of a final judgment.[4]

---

[2] The terms of the injunction ordered Ebenstein & Ebenstein, P.C., to "cease withholding complete and accurate information from the Plaintiff, concerning its claim for money damages, which is necessary for the proper calculation of the amount due Plaintiff on its Connecticut General Statutes Section 17-83f lien" and to provide "complete and accurate information [consisting] of the following:

1. As to each cause of action described in each of the fifty-two counts of the complaint:

(a) The amount of the gross proceeds of the cause of action;

(b) The amount of attorneys fees paid to Defendants and the itemized amount of expenses and costs of suit;

(c) The itemized costs of hospitalization, by whomever paid, over and above hospital insurance and other such benefits for such period of hospitalization as was not paid for by the State;

(d) The physicians' fees for services during any period connected with the cause of action, not paid for by the State, over and above medical insurance or other such benefits (itemized as to name and address of physician and amount);

(e) All other disbursements from the proceeds of the cause of action, including the amount paid to the client and the amount paid to the State of Connecticut, Plaintiff herein, under Connecticut General Statutes Section 17-83f."

[3] Although the trial court's partial summary judgment grants injunctive relief only as against Ebenstein & Ebenstein, P.C., and only that defendant has filed an appeal, we will refer to the defendant as "the attorneys."

[4] While this appeal was pending before the Appellate Court, that court sua sponte raised the issue of whether the partial summary judgment was a final judgment and invited briefing of that issue as part of the argument on the plenary appeal. Because appellate jurisdiction, absent special statutory dispensation, depends upon the existence of a final judgment; Gen-

The contours of a final judgment are established by the two part test set out in *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983). Under *Curcio,* an interlocutory order may be appealed immediately only if: (1) the order or action terminates a separate or distinct proceeding, or (2) the order or action so concludes the rights of the parties that further proceedings cannot affect them. In our view, the present interlocutory order does not qualify for immediate appealability under either test.

The parties' argument in favor of appealability has focused on the first *Curcio* test. Both the state and the attorneys urge us to conclude that the injunctive order for an accounting in this case is a separate proceeding warranting independent appellate resolution. We are unpersuaded.

The only authority for the state's claim for injunctive relief is § 17-83f (a), which gives the state a lien against the proceeds of causes of action of beneficiaries of state aid "in the amount of the assistance paid or fifty per cent of the proceeds received" after payment of specified expenses. At oral argument, the state acknowledged that this statute confers no right to an accounting except insofar as such an accounting is a requisite to enforcement of the state's statutory lien.[5] To enforce that lien, the complaint filed by the state sought money damages as well as injunctive

---

eral Statutes §§ 51-199, 52-263; this issue must be addressed even though both parties urge us to reach their substantive disagreement on its merits.

[5] When the legislature has authorized the state to require an independent accounting that is not ancillary to a substantive claim by the state for some form of recovery, the legislature has done so expressly. See, e.g., General Statutes § 21a-190c (charitable organizations required to file annual fiscal reports), § 36-188 (savings and loan associations subject to annual accounting), § 38a-18 (a) (2) (domestic insurance companies required to submit to accounting).

relief.[6] Read in its entirety, this complaint belies the assertion that the only object of the state's lawsuit was to require disclosure of the information sought in the request for injunctive relief.

An ancillary injunctive order requiring an accounting is no more a final judgment than is an ancillary order for the appointment of a receiver. We have consistently held that an order granting a request for a rent receivership in a foreclosure action is not a final judgment, even though such an order provides additional security for the foreclosing mortgagee and impairs the ownership rights of the mortgagor. *Hartford National Bank & Trust Co.* v. *Tucker,* 195 Conn. 218, 223, 487 A.2d 528, cert. denied, 474 U.S. 845, 106 S. Ct. 135, 88 L. Ed. 2d 111 (1985); *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 3–5, 469 A.2d 778 (1984); *Young* v. *Polish Loan & Industrial Corporation,* 126 Conn. 714, 715, 11 A.2d 395 (1940). A receivership in advance of a final resolution of the dispute between the parties is not an appealable order because "[a]ll of the parties concerned in the . . . controversy will still be before the court when the ultimate determination of their rights in respect to the distri-

---

[6] The prayer for relief claimed:

"(a) Money damages.

(b) Punitive damages.

(c) Interest for the wrongful detention of money after it became due.

(d) An injunction ordering the defendants to cease withholding complete and accurate information to the plaintiff, concerning said claims for money damages, which is necessary for the proper calculation of the amount due the plaintiff on its Connecticut General Statutes § 17-83f liens regarding the aforementioned 52 Counts.

(e) An injunction ordering the defendants to cease and desist from its [sic] pattern and practice of withholding complete and accurate information from the plaintiff, which is necessary for the proper calculation of amounts due the plaintiff under its Connecticut General Statutes § 17-83f liens.

(f) Any further equitable relief the Court deems proper."

bution of the rents is made after the mortgaged premises are sold." *Hartford National Bank & Trust Co. v. Tucker,* supra, 225. That rationale applies here.

The attorneys urge, however, that the appropriate analogy is not a rent receivership but a bill of discovery. They point to several cases in which this court reached the merits of judgments rendered in actions for bills of discovery without apparent concern about their immediate appealability. See, e.g., *Pottetti v. Clifford,* 146 Conn. 252, 150 A.2d 207 (1959); *Peyton v. Werhane,* 126 Conn. 382, 11 A.2d 800 (1940). Those cases reflect, however, the special nature of bills of discovery. Before revision of the rules of practice made discovery generally available, an independent bill of discovery was the only procedural vehicle by which "a party to an action at law could obtain the same discovery from an adversary that he could obtain had the action been in equity." 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 136, p. 562. Such a bill of discovery, although in fact ancillary to another action, was procedurally "an independent action [that had to] be initiated by a new writ and complaint, served on the person from whom discovery is sought in the same manner as for any in personam action." Id., § 143 (e), p. 602. Because the bill of discovery was an independent action, its merits could only be reviewed in an independent appeal.

The procedural constraints that surround a bill of discovery do not apply to the present injunctive order for an accounting. As in *Hartford National Bank & Trust Co. v. Tucker,* supra, the parties in this case will "still be before the court" upon a final determination of their respective rights to the proceeds of lawsuits brought on behalf of recipients of public assistance. Because the partial summary judgment rendered by the trial court is ancillary to the adjudication of the state's statutory

lien pursuant to § 17-83f (a), the judgment has not terminated a proceeding so separate or distinct as to satisfy the first test of *State* v. *Curcio*, supra.

Our precedents equally establish that the injunctive order for an accounting does not satisfy the alternative *Curcio* test of an order or action that so concludes the rights of the parties that further proceedings cannot affect them. The attorneys' principal objection to enforcement of the trial court's order rests on their allegation that they have an ethical obligation to treat as confidential the information that they have gained in the course of representing their clients. While it is true that the confidentiality of information cannot be fully retrieved once disclosure has been ordered, we have repeatedly ruled against the immediate appealability of ancillary discovery orders that seek such information in civil cases. *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 255–58, 520 A.2d 605 (1987); *Barbato* v. *J. & M. Corporation,* 194 Conn. 245, 249–50, 478 A.2d 1020 (1984); see also *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.,* 180 Conn. 223, 226, 429 A.2d 478 (1980). As we pointed out in *Melia,* the risk of impairment of the attorney-client privilege is not limited to pretrial disclosure orders but can as easily arise in "a ruling on evidence during trial, which would have to await final judgment for appellate review unless trials were to be interrupted whenever such a ruling occurred." *Melia* v. *Hartford Fire Ins. Co.,* supra, 257. Because appellate review after a final judgment can provide significant safeguards with respect to the use of privileged materials, we adhere to our holdings that invocation of a privilege does not demonstrate that the rights of the parties have been so concluded that further proceedings cannot affect them. Accordingly, we hold that the injunctive order for an accounting fails to satisfy the second *Curcio* test for immediate appealability.

The appeal is dismissed.