## ALVIN BERGER *v.* ANTHONY CUOMO ET AL.
## (14887)

CALLAHAN, BORDEN, KATZ, PALMER and DUPONT, Js.

Argued May 6—decision released July 5, 1994

*Constance L. Epstein,* with whom, on the brief, were *John Stephen Papa* and *Ronald G. Weller,* for the appellant (named defendant).

*William F. Gallagher,* with whom, on the brief, were *Cynthia C. Bott* and *Kurt Koehler,* law student intern, for the appellee (plaintiff).

KATZ, J. This case is an action in equity for discovery by the plaintiff, Alvin Berger, seeking documents from the defendants, Anthony Cuomo and First Federal Bank (First Federal), regarding Federal's release of Cuomo's personal liability on certain promissory notes. On those notes, however, Berger remains liable, both personally and as a general partner in a real estate venture that he had created with Cuomo. Following a court trial, the court rendered judgment for Berger and granted his prayer for discovery of the documents. This appeal followed.[1]

The trial court could reasonably have found the following facts. At some time prior to October 2, 1992, Berger and Cuomo formed a partnership, known as 2558 Whitney Associates. The partnership owned real estate at three different locations in Hamden. Cuomo owned 75 percent of the partnership and Berger owned 25 percent. Cuomo managed the affairs of the partnership and collected the rents. Because the partnership lost money each month, in order to pay the partner-

---

[1] The appeal, originally filed with the Appellate Court, was transferred to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

ship expenses the two partners contributed funds from their personal assets in proportion to their ownership interests in the partnership.

The three parcels of real estate owned by the partnership were encumbered by mortgages held by First Constitution Bank (First Constitution), dating from 1987. These mortgages were secured by notes of $1.7 million on which the partnership was liable and on which Berger and Cuomo were each jointly and severally liable.[2] Although payments on the notes were current, on or about October 2, 1992, Cuomo entered into an agreement with First Constitution[3] wherein Cuomo pledged $225,000 of his own funds in consideration for the release from his obligation on the notes. The agreement limited Cuomo's personal liability on the notes to the value of the property and the $225,000.[4] After making this agreement, Cuomo delivered to Berger a portion of the books and records of the partnership. He also advised Berger that he no longer intended to perform any property management services for the partnership, including payment of the partnership expenses or contribution to cover any shortfall. Until the end of October, however, Cuomo did not inform Berger that he had reached the agreement with First

---

[2] In December, 1987, there was a mortgage securing a note of $1,200,000, increased thereafter in 1988 to $1,500,000. In 1989, a separate mortgage and note for $200,000 was executed and recorded.

[3] First Constitution thereafter failed and was taken over by the Federal Deposit Insurance Corporation (FDIC). First Federal purchased the assets of First Constitution from the FDIC and at the time of trial was in possession of the documents that reflect the October 2, 1992 agreement made by Cuomo and First Constitution. Although Cuomo had initially pledged only the $225,000 to First Constitution, that pledge was later called in by the bank in January, 1994.

[4] In a letter from Cuomo to Berger, dated October 30, 1992, Cuomo stated that he "pledged the sum of $225,000 to secure my and the partnership's obligations under its loans in exchange for a release of further liability." Berger testified, however, that First Federal had informed him that Cuomo had been released from his personal liability on the notes.

Constitution. Thereafter, Berger assumed the management of the partnership, collected the rents, and paid its expenses to the extent that the income would permit.

Despite demands by Berger, Cuomo failed to make any shortfall contributions to the partnership after October 2, 1992, which, at the time of trial, amounted to $8000 per month. Berger subsequently defaulted on the notes. He thereafter attempted to negotiate with First Federal with a view toward clarifying and resolving both his individual liability and the partnership's liability on the notes. Berger attempted to obtain from First Federal and Cuomo all the closing documents produced by and between Cuomo and First Constitution pertaining to the release or limitation of Cuomo's liability on the notes. Because First Federal and Cuomo refused to disclose the documents,[5] Berger instituted this action.

In support of his request for a bill of discovery, Berger argued to the trial court that he lacked information necessary and material to initiate suit against Cuomo for: (1) Cuomo's forfeiture of his partnership interest; (2) contribution from Cuomo to the partnership for its continuing shortfall; (3) fraudulent conveyance against Cuomo as to Berger, and possibly as to the partnership; and (4) an accounting of funds while the partnership was managed by Cuomo. Berger also claimed to lack information necessary and material to initiate suit against First Federal and Cuomo for a declaratory judgment regarding the legality of the agreement between Cuomo and First Constitution. Additionally, Berger claimed to require information to initiate suit against First Federal for First Constitution's participation in a conveyance that Berger alleged

---

[5] First Federal indicated that it would supply Berger with the information he sought with the agreement of all parties. Because Cuomo did not grant his permission, First Federal did not consider itself at liberty to comply with the discovery request, absent a court order.

may have been fraudulent as to himself and the partnership. Finally, Berger maintained that he lacked information needed to defend against any mortgage foreclosure action likely to be brought as a result of his default on the notes.[6] The trial court agreed and rendered judgment for Berger.

On appeal, Cuomo contends that Berger failed to establish that the information sought is "material and necessary to the proof of another action to be brought . . . [or] that he has no other adequate means of enforcing discovery of the information sought." Specifically, Cuomo argues that the documents sought were not necessary because Berger was merely attempting to procure them in order to negotiate a favorable release similar to the one Cuomo had obtained. Cuomo also contends that the information sought could not advance or form the basis of any potential cause of action by Berger against him. Additionally, Cuomo disputes Berger's assertion that no other adequate means of enforcing discovery exist.[7] Finally, Cuomo argues that the trial court failed to require Berger to establish probable cause to bring a potential cause of action against him. We disagree, and therefore affirm the trial court's judgment.

# I

Before examining the sufficiency of the allegations and proof admitted in support thereof, a brief discussion of the bill of discovery is appropriate. The bill of discovery is an independent action in equity for discovery, and is designed to obtain evidence for use in an

---

[6] Although Berger does not make specific common law or statutory reference in support of his potential claims, it is clear that the Uniform Limited Partnership Act; General Statutes § 34-9 et seq.; contemplates actions between general partners for, inter alia, contribution and accounting.

[7] Cuomo specifically argues that the discovery mechanisms contained in General Statutes §§ 52-148a, 52-148e, 52-152, 52-156, 52-156a and 52-197 provide adequate substitutes for Berger's requested bill of discovery.

action other than the one in which discovery is sought. *Peyton* v. *Werhane,* 126 Conn. 382, 389, 11 A.2d 800 (1940). As a power to enforce discovery, the bill is within the inherent power of a court of equity that has been a procedural tool in use for centuries. See *Middletown Bank* v. *Russ,* 3 Conn. 135, 140 (1819); F. James & G. Hazard, Civil Procedure (2d Ed. 1977) § 1.4, pp. 12–13; 2 Z. Swift, A Digest of the Laws of the State of Connecticut (1823) p. 210; 1 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) §§ 142, 144, 190a, 191, 195. The bill is well recognized and may be entertained notwithstanding the statutes and rules of court relative to discovery. 1 J. Pomeroy, supra, § 193. Furthermore, because a pure bill of discovery is favored in equity, it should be granted unless there is some well founded objection against the exercise of the court's discretion. *Pottetti* v. *Clifford,* 146 Conn. 252, 257, 150 A.2d 207 (1959); *Peyton* v. *Werhane,* supra, 389.

To sustain the bill, the petitioner must demonstrate that what he seeks to discover is material and necessary for proof of, or is needed to aid in proof of or in defense of, another action already brought or about to be brought. *Pottetti* v. *Clifford,* supra, 146 Conn. 258. Although the petitioner must also show that he has no other adequate means of enforcing discovery of the desired material, "[t]he availability of other remedies . . . for obtaining information [does] not require the denial of the equitable relief . . . sought." Id., 262. This is because a remedy is adequate only if it "is one which is specific and adapted to securing the relief sought conveniently, effectively and completely. *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 13, 37 A.2d 689 [1944]; *Brainard* v. *West Hartford,* 140 Conn. 631, 635, 103 A.2d 135 (1954)." Id. The remedy is designed "to give facility to proof." Id., 259.

Discovery is confined to facts material to the plaintiff's cause of action and does not afford an open invi-

tation to delve into the defendant's affairs. *Carten* v. *Carten,* 153 Conn. 603, 613, 219 A.2d 711 (1966); *Pottetti* v. *Clifford,* supra, 146 Conn. 259. A plaintiff must be able to demonstrate good faith as well as probable cause that the information sought is both material and necessary to his action. *Pottetti* v. *Clifford,* supra, 259. A plaintiff "should describe with such details as may be reasonably available the material he seeks . . . and should not be allowed to indulge a hope that a thorough ransacking of any information and material which the defendant may possess would turn up evidence helpful to [his] case." Id., 263. What is reasonably necessary and what the terms of the judgment require call for the exercise of the trial court's discretion. *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.,* 289 U.S. 689, 696–97, 53 S. Ct. 736, 77 L. Ed. 1449 (1933).

Against this legal backdrop, we examine the trial court's findings in order to evaluate Cuomo's assertion that Berger failed to sustain his burden of proof. Cuomo acknowledges that for Berger to prevail, Berger was required to establish only that he had probable cause to bring a potential cause of action against Cuomo. Cuomo argues, however, that the trial court neglected to consider Berger's obligation to establish probable cause. We disagree.

The plaintiff who brings a bill of discovery must demonstrate by detailed facts that there is probable cause to bring a potential cause of action. "Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has reasonable grounds for presenting an action. . . . Its existence or nonexistence is determined by the court on the facts found." (Citation omitted.) *Cosgrove Development Co.* v. *Cafferty,* 179 Conn. 670, 671, 427 A.2d 841 (1980). Moreover, the plaintiff who seeks discovery in equity must demonstrate more than a mere suspicion; he must also show that there is some describable sense of wrong.

The plaintiff need not, however, state each claim with technical precision; he need only set forth facts that fairly indicate that he has some potential cause of action. *Pottetti* v. *Clifford,* supra, 146 Conn. 259.

A comparison of the trial court's judgment with its earlier decision granting Cuomo's motion to strike Berger's initial complaint is instructive. The trial court granted Cuomo's motion to strike that first complaint because it found that Berger had failed to "identify any action 'brought or about to be brought,' as required in *Pottetti* v. *Clifford* [supra, 146 Conn. 258]. Without the allegation that there is a potential cause of action that is to be supported by the information sought," the trial court found that Berger had failed to allege a situation entitling him to the relief sought.

Berger's amended complaint, unlike his first complaint, set forth a variety of potential claims against Cuomo and First Federal. The evidence submitted in support of those claims established the following: Cuomo and Berger were partners in a general partnership that owned three parcels of real property that were encumbered by two mortgages securing two promissory notes owned by First Federal on which the partnership was liable. There was also evidence that prior to private negotiations between Cuomo and First Constitution, both Cuomo and Berger had been jointly and severally liable on these same notes. Finally, there was evidence that the partnership continued to lose money and that Cuomo, who owned a 75 percent interest in the partnership, failed to contribute to the monthly shortfall that the partnership fell into default on its obligations to First Federal, and that Berger, who owned a 25 percent interest in the partnership, remained personally liable to First Federal on the notes even after Cuomo had negotiated with First Constitution to obtain a release of his own personal liability.

On the basis of this evidence, the trial court could properly have concluded that Berger had established probable cause to bring at least one, if not several, potential causes of action and that he was merely attempting " 'to gather his evidence in advance' " in order to avoid proving his case " 'clumsily or wastefully.' " *Pottetti* v. *Clifford,* supra, 146 Conn. 258. As the trial court recognized, there is a distinction between a would-be plaintiff having to demonstrate the need for the information to determine whether a particular cause of action is worthy of being pursued and a plaintiff having to prove definitively that he has a cause of action and that he will probably prevail ultimately at the trial on the merits.[8]

We note that Cuomo does not argue that Berger has no cause of action against him. On the contrary, Cuomo argues that Berger already has enough information to support the claims for potential causes of action set forth in his complaint. Cuomo suggests that Berger's true purpose in seeking the bill of discovery is to procure the documents in order to negotiate a favorable release on the notes similar to the settlement that he had obtained. The trial court was not required, however, to agree with Cuomo's contention. The trial court was within its discretion in accepting Berger's argument that he needed to see the documents in order to discern "which if any of these actions [as contained in paragraph ten of Berger's amended complaint] should be maintained." At the trial, Cuomo simply argued that

---

[8] This distinction was explicitly noted by the trial court when, during cross-examination, Cuomo tried to ask Berger whether the terms of their partnership agreement precluded either of them from limiting their respective liability on the promissory notes. In sustaining Berger's objections to this area of inquiry, the trial court remarked: "[A] bill of discovery . . . does not require the plaintiff to show [he is] going to prevail on the claims for which he wants the evidence. . . . [Y]ou seem to be trying to defeat the claims themselves rather than right now the only thing before the court is whether there is a need for this information."

the documents evidencing the agreement between him and First Constitution were "not needed for what [Berger] contemplates in his writ. He could bring that writ without this agreement." Berger responded that his "very discreet, direct inquiry" was to avoid a "fishing expedition." Further, Berger's counsel argued that he believed he "had an ethical obligation to ascertain whether [his] client has . . . a cause of action before bringing [it]." Without the documents, Berger's counsel represented that he would have to bring an action and then seek discovery in an attempt to ascertain whether the transaction between Cuomo and First Constitution had been legitimate and whether his client had any recourse. It was within the discretion of the trial court to ascertain the sincerity of the argument of Berger's counsel and to determine if the evidence justified his request for the bill of discovery.

Cuomo's second claim is that the requested documents were not material or necessary. We disagree. The documents requested were material because they pertained to the question Berger needed to answer: which of the many potential causes of action against Cuomo and/or First Federal was most worthy of pursuit? Although Berger already possessed the partnership agreement, arguably he needed the closing documents to discern the answer to this question. Because Berger already had been denied access to the documents by Cuomo and First Federal, the bill of discovery was the only method, short of filing suit " 'clumsily or wastefully' "; *Pottetti* v. *Clifford,* supra, 146 Conn. 258; that would afford him access to those documents. Under the circumstances of this case, therefore, the trial court acted within its discretion in granting the bill of discovery, thereby enabling Berger to determine which actions he should ultimately assert. See *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.,* supra, 289 U.S. 696–97 (what is reasonably necessary

should be determined by sound discretion of trial court); *Peyton* v. *Werhane,* supra, 126 Conn. 389.

## II

Cuomo's last claim is that the trial court improperly limited the scope of his cross-examination of Berger by refusing to permit him to ask Berger whether the partnership agreement precluded Cuomo from limiting his liability on the notes.

In sustaining Berger's objection to Cuomo's question concerning the partnership agreement,[9] the trial court stated that a bill of discovery did not require Berger to establish that he would prevail on his claims. Cuomo argued that the trial court previously, in granting his motion to strike, had noted that "[Berger had] not alleged in his pleading that his partnership agreement with [Cuomo] preclude[d] subsequent limitations of [Cuomo's] liability nor that the terms of the [agreement with First Constitution] preclude[d] agreements that alter[ed] [Berger's] own exposures." The trial court explained, however, that it had granted Cuomo's motion because Berger had failed to indicate any potential causes of action that he proposed to assert, and that it had made the above statement merely to illustrate some of the potential causes of action that Berger could have asserted. In response to the trial court's explanation, Cuomo stated that he would not pursue the issue if the trial court considered it to be irrelevant.

To have preserved the issue properly, Cuomo was required to take an exception to the trial court's ruling pursuant to Practice Book § 288;[10] *Farrell* v. *St.*

---

[9] Cuomo posed the following question: "Is there anything in that partnership agreement which prohibited subsequent limitations of personal liability? When you signed on for the note, was there a prohibition?"

[10] Practice Book § 288 was amended effective October 1, 1993, by deleting the requirement that an exception to a ruling must be taken in order to preserve appellate review.

*Vincent's Hospital,* 203 Conn. 554, 569, 525 A.2d 954 (1987); which he failed to do. Of greater significance is the fact that Cuomo specifically abandoned any objection to the ruling at trial. Because we decline to permit Cuomo presently to challenge a ruling he previously had accepted, we reject this claim. See *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982) (assigning error to trial court's evidentiary ruling on basis of objection not preserved at trial amounts to ambuscade of trial judge).

The judgment is affirmed.

In this opinion the other justices concurred.