******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VINCENT G. BENVENUTO *v.* KEVIN BROOKMAN
## (SC 20699)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The plaintiff, a lieutenant with the Hartford Police Department, filed a bill
of discovery against the defendant, who publishes an Internet blog on
issues relating to Hartford municipal governance, seeking the production
of certain materials that would enable the plaintiff to ascertain the
identities of persons who had posted anonymous blog comments con-
taining allegedly defamatory statements about him. Specifically, the
plaintiff sought to compel the defendant to release the Internet protocol
addresses and any other information identifying the anonymous com-
menters and to submit for forensic analysis the hard drive of the laptop
and the cell phone the defendant used in connection with the blog. The
trial court granted the plaintiff's bill of discovery, concluding that the
plaintiff had demonstrated probable cause with respect to his defamation
claim against the authors of certain anonymous comments. To safeguard
the defendant's privacy interests, the court ordered that the parties
initially attempt to come to an agreement on the terms of a protective
order and search protocols that would govern the scope and procedures
to be used in the forensic analysis of his electronic devices. The court
further ordered that, if the parties could not agree on those matters,
then they must submit to the court proposed orders so the court could
resolve any dispute. The court explicitly retained jurisdiction until such
time as the parties filed their agreements or the court resolved any
related disputes. Before the parties attempted to negotiate the terms,
however, the defendant appealed, challenging the trial court's granting
of the plaintiff's bill of discovery on various constitutional, statutory,
and evidentiary grounds.

*Held* that the trial court's decision granting the plaintiff's bill of discovery
was not an appealable final judgment, and, accordingly, this court dis-
missed the defendant's appeal for lack of jurisdiction:

The final judgment rule applies to a pure bill of discovery, the trial court's
decision in the present case would not become a final judgment until
the scope of discovery was clearly defined by agreement of the parties
or, in the absence of an agreement, by court order, and, because the
parties had not yet complied with the aspect of the trial court's order
requiring them, prior to any discovery, to either file an agreement regard-
ing the terms of the protective order and search protocols or to return
to the trial court for resolution of those issues, the trial court's decision
was not a final judgment in the usual sense.

Moreover, contrary to the defendant's claim, the trial court's interlocu-
tory decision did not constitute an appealable final judgment under the
second prong of *State* v. *Curcio* (191 Conn. 27), insofar as it did not so
conclude the rights of the parties that further proceedings could not
affect them.

Specifically, the trial court's order that the parties "attempt" to agree
meant only that counsel was required to engage in good faith efforts to
reach an agreement regarding the terms of the protective order and
search protocols and in no way required, contrary to the defendant's
argument, the defendant's counsel to reveal information that would put
at risk the statutory and constitutional rights to anonymity that the
defendant sought to protect, as counsel could decline to reveal any such
information if he acted in good faith and could ask the court to decide
the open issues if the negotiations were to fail, and the very purpose of the
further proceedings contemplated by the court's order was to safeguard
those rights to the extent possible.

Furthermore, the defendant's argument that, regardless of the terms of
the protective order and search protocols, his asserted rights to privacy

would be violated once the forensic analysis of his devices was undertaken also failed to satisfy the second prong of *Curcio* because, although proceedings in the trial court relating to the protective order and search protocols might not have extinguished the defendant's aggrievement or eliminated his grounds for appeal, the terms of the order and protocols might have affected the nature or scope of the issues requiring resolution in a future appeal.

In addition, the exception to the final judgment rule recognized in *Curcio* is applicable only when this court finds that a cognizable legal right to which the appellant was plausibly entitled would be lost if appellate review were delayed, there could be no search of the defendant's devices until after the terms of the protective order and search protocols were finalized by agreement or by the court, until then, there was no threat of disclosure of the information that the defendant claimed he was legally entitled to withhold, and, accordingly, it was clear that the defendant would suffer no risk of irreparable harm to the rights he sought to preserve if he had been required to defer his appeal until the parties complied with the court's order.

Strict adherence to the requirements of the final judgment rule was appropriate under the present circumstances insofar as that rule implicates the court's jurisdiction and is intended to promote efficient judicial administration by discouraging piecemeal appeals, and, although an appeal by the defendant may be inevitable, he could not jump the gun by obtaining appellate review before the court's decision in the present case becomes a final judgment.

Argued October 19, 2023—officially released March 5, 2024

*Procedural History*

Petition for a bill of discovery seeking certain information and materials that would aid in the discovery of the identities of anonymous commenters to the defendant's blog, brought to the Superior Court in the judicial district of Hartford, where the court, *Noble, J.*, granted the plaintiff's motion to strike the defendant's special defenses; thereafter, the case was tried to the court, *Noble, J.*; judgment granting the plaintiff's petition, and the defendant appealed. *Appeal dismissed*.

*Mario Cerame*, with whom were *Robert Killian* and *Ikechukwu Ubaike*, law student intern, for the appellant (defendant).

*Gregory A. Jones*, with whom was *Patrick Tomasiewicz*, for the appellee (plaintiff).

*Jay M. Wolman* filed a brief for Public Citizen as amicus curiae.

*Opinion*

ECKER, J. This is an appeal from an order granting a bill of discovery and requiring the defendant, Kevin Brookman, who publishes an Internet blog known as "We The People–Hartford," to submit his laptop and cell phone for a forensic analysis that will enable the plaintiff, Vincent G. Benvenuto, to ascertain the identities of persons who posted blog comments containing allegedly defamatory statements about him. "[T]o safeguard the defendant's privacy interest," the trial court's discovery order mandates that the parties attempt to reach an agreement on the terms of a protective order and search protocols that together will govern the scope and procedures to be used in the forensic analysis, or, in the absence of an agreement, submit proposed orders so that the trial court can resolve any disputes regarding the terms of the protective order and search protocols. The court expressly retained jurisdiction until such time as the parties have filed an agreement or the court has resolved any impasse. Following oral argument, we ordered the parties to file supplemental briefs addressing whether the trial court's order is a final judgment for purposes of appellate review. We conclude that the order is not final and dismiss the appeal.

The following facts and procedural history are relevant to our disposition. The defendant's blog "concentrates on police, fire, public works, the board of education, and city hall as they relate to Hartford residents." The blog contains two sections, the first of which includes the defendant's investigative reports regarding matters of municipal governance. The second section consists of comments posted by readers, who can elect to reveal their identity or to remain anonymous. The present case arises from comments posted anonymously in the second section of the blog between August 5 and October 21, 2019, containing allegedly defamatory comments about the plaintiff, a lieutenant with the Hartford Police Department. There is no claim that the defendant was the author of these comments, conspired with the commenters, or has actual knowledge of the identities of the commenters.

The plaintiff filed the present action, seeking a pure bill of discovery[1] requiring the defendant to release the Internet protocol addresses and any other information identifying the anonymous commenters, and requiring the defendant to submit for forensic analysis the hard drive of the laptop and the media storage of the cell phone used to access, monitor, and maintain the blog. The plaintiff alleged that he sought this information so that he could file defamation claims against the anonymous commenters. The defendant raised a special defense, alleging that the information was shielded from disclosure under General Statutes § 52-146t because his blog fell within the definition of "[n]ews media" protected by that statute.[2] The trial court granted the plain-

tiff's motion to strike the special defense on the ground that "the facts alleged in the [defendant's] first special defense fail to support any of the criteria outlined by the legislature [in § 52-146t] that would allow [the trial] court to consider including [his] blog under 'news media.' "

After a bench trial on the bill of discovery, the court found that four anonymous comments were defamatory per se because they referred to the plaintiff in his professional capacity as a police officer and were false.[3] The court concluded that the plaintiff had demonstrated probable cause to bring an action for defamation against the authors of those four comments.[4]

In fashioning the appropriate relief, the court determined that "[t]he only source . . . of any potential information relative to the identity of the commentors is . . . meta- and other data contained in the defendant's laptop and cell phone." The court credited the testimony of the plaintiff's expert witness, who explained that "a forensic analysis of the defendant's data . . . might contain identifiers in emails and texts that may be used to identify identical key words relative to the comments" and might reveal "potential information relative to the identity of the commentors . . . ." The court therefore ordered the defendant to submit his laptop's hard drive and his cell phone for forensic analysis. "[T]o safeguard the defendant's privacy interest, the court order[ed] the parties to attempt to reach an agreement on the terms of a protective order that adequately preserves the defendant's interests, and to attempt to agree on a search protocol covering procedures, search terms, and dates." If the parties could not "reach agreement on these subjects," the court would require them "to submit proposed orders regarding the protective order and search protocols." The trial court noted that it would "retain jurisdiction of this action until such time as the parties have filed agreements as to the [terms of the protective order and the search protocols] or the court resolves any related disputes." The parties have not yet attempted to negotiate the terms of the protective order or to agree on the search protocols that will be used in conducting the forensic analysis. Instead, the defendant filed the present appeal without complying with the court's order regarding these issues.[5]

On appeal, the defendant claims that the trial court improperly granted the bill of discovery because (1) the blog is protected from disclosure as "news media," as defined by § 52-146t, (2) the court applied the wrong legal standard in its decision to " 'unmask' " the anonymous commenters, in violation of article first, §§ 4, 5, and 14, of the Connecticut constitution, (3) the evidence was insufficient to establish that the anonymous comments were defamatory, and (4) the court's discovery order was overly broad and unreasonably invasive.

Following the submission of appellate briefs and oral

argument before this court, we ordered the parties to file supplemental briefs addressing whether the trial court's decision constitutes an appealable final judgment in light of the fact that the parties have not yet complied with the aspect of the court's order requiring them, prior to any discovery, either to file an agreed on protective order and search protocols or, in the event of an impasse, to return to the trial court for resolution of those threshold issues. In their supplemental briefs, both parties agree that the circumstances render the judgment nonfinal for purposes of appeal unless it comes within the exception set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). The plaintiff contends that the judgment is not immediately appealable because it satisfies neither prong of the *Curcio* exception. The defendant argues that the judgment is immediately appealable under the second prong of *Curcio*, which treats an otherwise interlocutory order as an appealable final judgment when it "so concludes the rights of the parties that further proceedings cannot affect them." Id. We agree with the plaintiff and, accordingly, dismiss the appeal for lack of jurisdiction.

Except as otherwise provided in the state constitution, the jurisdiction of our appellate courts is determined purely by statute. See, e.g., *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 718, 207 A.3d 493 (2019). General Statutes §§ 51-197a and 52-263, in turn, limit the "statutory right to appeal . . . to appeals by aggrieved parties from final judgments." *State* v. *Curcio*, supra, 191 Conn. 30; accord *Halladay* v. *Commissioner of Correction*, 340 Conn. 52, 57, 262 A.3d 823 (2021). Because the requirement of a final judgment implicates our jurisdiction, we must determine whether the judgment is final before reaching the merits of the appeal. See, e.g., *Smith* v. *Supple*, 346 Conn. 928, 937, 293 A.3d 851 (2023).

"Adherence to the final judgment rule is not dictated by legislative fiat alone." *State* v. *Curcio*, supra, 191 Conn. 30. The rule also serves important functional purposes relating to efficient judicial administration in both the appellate and trial courts, namely, "to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." (Internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 459, 239 A.3d 272 (2020); accord *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 33, 930 A.2d 682 (2007); see also *Burger & Burger, Inc.* v. *Murren*, 202 Conn. 660, 663, 669, 522 A.2d 812 (1987). Our "decisions recognize that the allowance of interlocutory appeals must be very narrowly prescribed" because " '[i]mmediate review of every trial court ruling, while permitting more prompt correction of erroneous decisions, would impose unreasonable disruption, delay, and expense. It would also undermine the ability of [trial court] judges to supervise litigation.' " *Burger & Burger, Inc.* v. *Murren*, supra, 669,

quoting *Richardson-Merrell, Inc.*, v. *Koller*, 472 U.S. 424, 430, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985). Our usual policy of strict enforcement of the final judgment rule at times may come at the cost of providing immediate appellate relief to an aggrieved party, but "this court has expressed the preference that some erroneous trial court decisions go uncorrected until appeal after judgment rather than have litigation disrupted by piecemeal appeals." *Burger & Burger, Inc.* v. *Murren*, supra, 669.

The plaintiff in this case seeks a pure bill of discovery. The bill of discovery is an equitable action "designed to obtain evidence for use in an action other than the one in which discovery is sought." *Berger* v. *Cuomo*, 230 Conn. 1, 5–6, 644 A.2d 333 (1994). In a pure bill of discovery, the plaintiff "seeks no remedy other than [the] disclosure of certain information or documentation . . . ." *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 699, 804 A.2d 823 (2002) (*Borden, J.*, dissenting); see footnote 1 of this opinion. "Because the bill of discovery [is] an independent action, its merits [can] . . . be reviewed [only] in an independent appeal." *State* v. *Ebenstein*, 219 Conn. 384, 389, 593 A.2d 961 (1991).[6] That said, the final judgment rule applies to a pure bill of discovery as it does to any other civil action, and the judgment in such a case does not come within our appellate jurisdiction unless and until it satisfies the statutory requirement of finality or falls within a *Curcio* exception.

The parties agree that the judgment in the present case is not yet final unless *Curcio* applies. Although the trial court ordered the defendant to submit two of his devices for forensic analysis, the parties have yet to comply with that part of the judgment requiring them, at the outset, to take certain designated steps to establish "the terms of a protective order that adequately preserves the defendant's [privacy] interests" and "a search protocol covering procedures, search terms, and dates" in connection with the forensic analysis. The trial court ordered that counsel first "attempt to reach an agreement" as to the terms of the protective order, and "attempt to agree" on the search protocols. Recognizing that such an agreement may not occur, the court's order requires the parties to return to court in the event of an impasse so that the court can resolve any remaining disputes concerning the protective order and search terms.[7] The court explicitly retained jurisdiction over the case "until such time as the parties have filed agreements as to the [terms of the protective order and the search protocols] or the court resolves any related disputes." The trial court's judgment is not final until the scope of discovery has been clearly defined by agreement or, in the absence of agreement, by court order. As of now, no such agreement has been filed, and no such court order has been sought or obtained. The judgment is therefore not final in the usual sense.

Nor can we conclude under these circumstances that the judgment is final under *Curcio*. An otherwise nonfinal judgment may be deemed final and appealable under *Curcio* " '(1) [when] the order or action terminates a separate and distinct proceeding, or (2) [when] the order or action so concludes the rights of the parties that further proceedings cannot affect them.' " *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 248, 478 A.2d 1020 (1984), quoting *State* v. *Curcio*, supra, 191 Conn. 31. Although he raises no claim under the first prong of *Curcio*,[8] the defendant argues that the judgment is immediately appealable under *Curcio*'s second prong for two primary reasons.

First, the defendant argues that "interlocutory review is necessary to preserve the substantive rights to anonymity at stake, statutory and constitutional." More specifically, he contends that "[t]he order 'to attempt to agree' [requires him] to engage in a back and forth conversation concerning search terms and dates" and that "this compelled conversation puts [substantive rights to anonymity] at risk." He asserts that "[n]egotiations refusing one term and allowing another can reveal information about anonymous identities." We reject this claim.

The trial court ordered the parties *to attempt* to reach an agreement, nothing more. This means that the defendant's counsel must engage in good faith efforts to reach an agreement, in whole or in part, regarding the terms of the protective order and search protocols. The order in no way requires counsel to reveal information during these negotiations that will put at risk the "substantive rights to anonymity" that he claims a right to preserve and protect. So long as counsel acts in good faith, he may decline to reveal any such information in connection with the negotiation process, and he may request the trial court to decide the open issues if the negotiations fail.[9] We do not accept the argument that, by requiring the parties to make efforts to reach agreement on the terms of a protective order, the judgment concludes the rights of the defendant such that further proceedings relating to the terms of the protective order and search protocols cannot affect those rights. Indeed, the very purpose of the further proceedings contemplated by the trial court's order is to safeguard the defendant's rights to the extent possible.

The defendant's second argument is that he will be "compelled to give his laptop and cell phone for forensic review" and that there can be "nothing in subsequent orders that [will] change the . . . granting [of] the bill of discovery [or that] will alter [this] order to relinquish the property . . . putting critical rights at risk."[10] In other words, regardless of the terms of the protective order and search protocols, the defendant contends that his asserted rights are certain to be violated once the forensic analysis is undertaken. This argument also

fails to satisfy the second prong of *Curcio*.

First of all, although proceedings in the trial court relating to the protective order and search protocols may not extinguish the defendant's aggrievement or eliminate his grounds for appeal, the terms of the order and protocols might very well affect the nature or scope of the precise issues requiring resolution in a future appeal. The trial court, for its part, plainly contemplated that a protective order could function to help "safeguard" at least some of the defendant's interests, and we have no reason to doubt that such an order, properly drafted, may have such an effect. For example, on the merits of the present appeal, one of the defendant's arguments is that the trial court's discovery order is "overbroad and entirely far too invasive . . . ." This is the type of concern that can readily be eliminated by a properly drafted protective order.

Second, and more fundamental, even if the defendant were correct that further proceedings in the trial court will do nothing to affect the claims of error arising from the portion of the case that already has been adjudicated, that fact would not change our conclusion that the second prong of *Curcio* is not satisfied under the present circumstances. Although the shorthand version of the second prong of *Curcio* asks whether "the order on appeal so concludes the rights of the parties that further proceedings cannot affect them," our cases make it abundantly clear that this truncated formulation does not capture the full scope of the analysis. *State* v. *Curcio*, supra, 191 Conn. 33. As the court in *Curcio* itself explained, the inquiry "focuses not on the proceeding involved, but on the potential harm to the appellant's rights" if appellate review is delayed. Id. The exception to the final judgment rule "is applicable only [when] we find that a cognizable legal right to which the appellant was plausibly entitled would be *lost* if appellate review were delayed." (Emphasis added.) Id., 34; see also *Halladay* v. *Commissioner of Correction*, supra, 340 Conn. 62–63 ("the second prong of *Curcio* boils down to whether, as a practical and policy matter, not allowing an immediate appeal will create irreparable harm insofar as allowing the litigation to proceed before the trial court will—in and of itself—function to deprive a party of that right"); *Ruggiero* v. *Fuessenich*, 237 Conn. 339, 347, 676 A.2d 1367 (1996) ("[t]he second prong of *Curcio* requires . . . the plaintiffs to prove that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the plaintiffs irreparably harmed unless they may immediately appeal"). It is clear that the defendant will suffer no risk of irreparable harm to his rights if he is required to defer his appeal until the parties comply with the court order with respect to the protective order and search protocols. There can be no search of the electronic devices until after the protective order and search protocols are final-

ized (whether by agreement or judicially) and entered as an order of the court. It follows that, until then, there is no threat of disclosure of the information that the defendant claims he is legally entitled to withhold. At that point in time, the defendant can exercise his appellate rights if he still wishes to do so, and he will be in no worse of a position than he is today with respect to his ability to vindicate his rights on appeal.

Strict adherence to the requirements of the final judgment rule under the present circumstances serves two important purposes. First, the rule is jurisdictional, and we are not at liberty to expand our jurisdiction merely because it seems expedient to do so. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 40, 213 A.3d 1110 (2019) ("Neither the parties nor the trial court . . . can confer jurisdiction [on an appellate] court. . . . [E]xcept insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review . . . appellate jurisdiction is limited to final judgments of the trial court." (Internal quotation marks omitted.)). An appeal by the defendant may be inevitable, as he predicts. That circumstance does not allow the defendant to jump the gun by obtaining appellate review before the judgment is final. Second, even apart from jurisdictional considerations, we noted previously in this opinion that one of the principal purposes served by the final judgment rule is to prevent piecemeal appeals. Permitting a party to appeal a nonfinal judgment creates the risk of fragmented trial and appellate proceedings. In the present case, for example, either the plaintiff or the defendant may be disappointed by the terms of the protective order and search protocols yet to issue if no agreement can be reached, and an appeal may follow. We consider it far preferable to entertain a single appeal raising all appellate claims emanating from a single case, unless the circumstances require interlocutory review under an established exception to the final judgment rule.

We have considered the defendant's other arguments and consider them to be without merit.

For the foregoing reasons, we conclude that the defendant has appealed from a nonfinal judgment. Accordingly, we dismiss the appeal for lack of jurisdiction.

The appeal is dismissed.

In this opinion the other justices concurred.

[1] The bill of discovery "is designed to obtain evidence for use in an action other than the one in which discovery is sought." *Berger* v. *Cuomo*, 230 Conn. 1, 5–6, 644 A.2d 333 (1994). A pure bill of discovery seeks no relief other than the disclosure of information in some form. See, e.g., *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 699, 804 A.2d 823 (2002) (*Borden, J.*, dissenting). It is distinguishable from a second type of bill of discovery, the "bill of discovery and relief," "in which a plaintiff not only seeks some information or document in the possession of the adverse party, but also requests that the court take some affirmative action on the asserted cause of action." Id.

[2] The defendant also raised a special defense claiming statutory protection

under the Communications Decency Act of 1996 (CDA), 47 U.S.C. § 230, "for the publication of his personal opinions or as the publisher of anonymous opinions of others . . . ." The trial court granted the plaintiff's motion to strike this special defense because the defendant had failed to plead any facts establishing that "the CDA shields him from disclosing the identifying information regarding commenters on the blog or [explaining] how he is a publisher pursuant to the CDA . . . ." The trial court's ruling on the CDA special defense is not before us on appeal.

[3] The court found the following four comments to be defamatory for purposes of the present action: (1) "Go back to sleep Vinnie. You have to start the van for the early commute in a few hours. Oh just kidding, you can sleep during your shift in 608 so you are well rested for your morning cup of [j]oe with [the assistant police chief]." (2) "Vinny is the leak, fact." (3) " '[The plaintiff] was racist so they kept him out of [Q]ueens and [the] Bronx.' " And (4) "[now that] Vinnie has threatened to cut [the defendant's] throat and made racially insensitive comments towards . . . an African American officer, do you think it's possible that 'Anonymous said: What makes you think [another officer] aligns himself with [the plaintiff]?' " In that fourth post, the commenter also "characteriz[ed] the plaintiff as 'a complete disgrace to the badge' . . . ."

[4] The plaintiff conceded that he is a public figure. Typically, public figures who allege defamation "also must prove that the defamatory statement was made with actual malice, such that the statement, when made, [was] made with actual knowledge that it was false or with reckless disregard of whether it was false." (Internal quotation marks omitted.) *Gleason* v. *Smolinski*, 319 Conn. 394, 431, 125 A.3d 920 (2015). However, the trial court in the present case did not require the plaintiff to show actual malice "[b]ecause a pure bill of discovery 'is favored in equity [and] should be granted unless there is some well-founded objection against the exercise of the court's discretion' . . . and because of the near impossibility that a public figure would be able to establish actual malice on the part of an anonymous declarant under the present circumstances such that the identity of the declarant is unknown . . . ." (Citation omitted.)

[5] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] Civil actions typically seek ultimate relief other than (or in addition to) discovery, and interlocutory discovery orders in such cases are always nonfinal and nonappealable unless they qualify for immediate appeal under *Curcio*. See *Redding Life Care, LLC* v. *Redding*, supra, 331 Conn. 730 ("[g]enerally, an order issued [in connection with] a motion for discovery ordinarily is not appealable because it does not constitute a final judgment, at least in civil actions" (internal quotation marks omitted)). A pure bill of discovery is different because no other relief is sought. Cf. *Lougee* v. *Grinnell*, 216 Conn. 483, 485–87, 582 A.2d 456 (1990) (concluding that trial court's denial of motion to quash deposition subpoena in connection with out-of-state lawsuit constituted appealable final judgment under first prong of *Curcio* because Connecticut proceeding would "not result in a later judgment from which [the deponent could] then appeal," and order thus terminated separate and distinct proceeding (internal quotation marks omitted)), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999).

[7] This aspect of the order adopts a procedure similar to the one used in our rules of practice governing discovery disputes in general, which require the parties to exercise good faith efforts to resolve any such dispute before seeking judicial resolution. See, e.g., Practice Book § 13-10 (i) ("[n]o objection to any request for production shall be placed on the short calendar list until an affidavit by counsel or self-represented parties is filed certifying that they have made good faith attempts to resolve the objection and that counsel and/or self-represented parties have been unable to reach an agreement"). The requirement of good faith efforts serves a very important purpose because, by requiring the lawyers to meet and discuss in detail the specific needs and concerns of each respective side, they frequently are able to substantially narrow or even eliminate altogether the disputed issues, a result that not only preserves scarce judicial resources but often produces an agreed on compromise that is preferable to whatever order may be imposed by the court in the absence of agreement. Although there is no way to know whether counsel in the present case will reach an agreement that narrows or eliminates the dispute between the parties, they are required to make the effort. If that effort fails, the trial court will adjudicate the

open issues.

[8] The first prong of *Curcio* requires the order to "[terminate] a separate and distinct proceeding . . . ." *State* v. *Curcio*, supra, 191 Conn. 31. "The question to be asked is whether the main action could proceed independent of the ancillary proceeding." *State* v. *Parker*, 194 Conn. 650, 654, 485 A.2d 139 (1984). Here, although the bill of discovery was granted, no separate or distinct proceeding has terminated. Instead, the trial court ordered the parties to file an agreement that would eventually lead to the termination of the present proceeding. This order is not an ancillary proceeding, and the main action cannot proceed independently therefrom. "[T]he order granting" the bill of discovery certainly is not "the final step," and "there are further proceedings to be undertaken." *Barbato* v. *J. & M. Corp.*, supra, 194 Conn. 248.

[9] To be clear, we do not intend to suggest that the defendant's attorney is at liberty to refuse altogether to participate in the negotiation process ordered by the trial court, and we trust that he will reconsider the statement in his supplemental brief that, because "[t]he compelled conversation threatens anonymity," the defendant "will refuse" even "to 'attempt to agree' " regarding the terms of the protective order and search protocols. Counsel is not required to reach an agreement regarding the protective order, and, during the course of the required negotiations, he is not required to reveal the information that the defendant claims a legal right to withhold in this lawsuit. But he is required to engage in good faith negotiations.

[10] The defendant does not contend that he has standing in this lawsuit to assert the rights of the nonparty commenters. The defendant's claim, rather, is that compelled disclosure of the information at issue violates his own statutory and constitutional rights. In making his arguments to this court with respect to the jurisdictional issue at hand, the defendant occasionally loses sight of the fact that he is not defending the rights of others. In adjudicating this appeal, we cannot credit any argument that is based on the defendant's assertion of the rights of third parties because he has not argued, either at trial or in this court, that he has third-party standing to assert the rights of the anonymous nonparty commenters, and the record before us does not allow such a determination to be made.

Thus, for example, the defendant cannot establish a right to appeal on the basis of *Doe* v. *Rackliffe*, 173 Conn. App. 389, 164 A.3d 1 (2017). The Appellate Court in *Rackliffe* "determin[ed] that [t]he trial court order denying a motion for continued use of pseudonyms . . . [was] an appealable final judgment pursuant to the second prong of" *Curcio*. (Internal quotation marks omitted.) Id., 395 n.3. *Rackliffe* is manifestly distinguishable, however, because the plaintiffs in that case were asserting their *own* rights to proceed pseudonymously, rather than the rights of others to do so. See id., 398.

The same can be said of *Sabanovic* v. *Sabanovic*, 108 Conn. App. 89, 946 A.2d 1288 (2008), which the defendant cites as illustrating "that orders implicating anonymity are appealable final judgments." The anonymity rights in *Sabanovic*, however, involved the parties' minor children. See id., 90–91. Further, the Appellate Court in that case concluded that, "[r]egardless of the outcome of the underlying proceedings, the court would have no occasion to revisit the issues addressed by the court's revocation orders, namely, whether the privacy interests of the parties' children override the public's interest in viewing the unsealed materials." Id., 90 n.1. Here, the defendant has not asserted that he has third-party standing to vindicate the rights of the anonymous nonparty commenters, and the as yet unresolved issues relating to the protective order and search protocols directly involve the issues sought to be raised on appeal.

―――――――――――――――